Opinion issued March 17, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00987-CV

———————————

Noble Mortgage & Investments, LLC, Appellant

V.

D&M
Vision Investments, LLC, Danny K. Whitfield, SR., and Mary W. Whitfield, Appellees.

* * *

D&M Vision Investments, LLC, Danny K. Whitfield, SR., and Mary
W. Whitfield,
Appellant

V.

Noble
Mortgage & Investments, LLC, Appellees.



 

 

 



 

On Appeal from the 11th District Court

Harris County, Texas



Trial Court Case No. 2008-21310

 



 

O P I N I O N

This is an
appeal following a bench trial from a judgment adjudicating title and encumbrances
to real property.  We reverse the trial
court’s judgment.  

BACKGROUND

This dispute involves property
located at 1923 Blodgett in Houston. 
(“Blodgett Property”).  Danny
Whitfield (“Whitfield”) purchased the Blodgett Property at an execution sale held
to satisfy a county court judgment against the then owner, Kenneth Banks
(“Banks”).  Plaintiff D&M Vision
Investment (“D&M”), a company owned by Whitfield and an assignee of title
to the Blodgett Property, filed a trespass to try title action against Noble
Mortgage (‘Noble”), another party claiming later-acquired title to the same
property.  Noble counterclaimed against
D&M and filed cross-claims against Whitfield and his wife, seeking title to
the property or, alternatively, a subrogation lien.  Because the timing of various transactions
and filings are germane to this appeal, we first set forth several relevant
transactions and their dates.

In March 2005, Houston Kaco, Inc.—a
company owed by Banks—purchased
the Blodgett Property.  The purchase was
financed by a mortgage from Statewide Capital Investments (“Statewide”) and
secured by a deed of trust properly recorded in the real property records in
favor of Statewide.  This mortgage and
deed of trust were later transferred from Statewide to International Bank of
Commerce (“ICB”), which recorded the assignment in the real property records.

On March 23, 2006, Houston Kaco
transferred title to the Blodgett Property to Banks personally.  In October 2007, Banks sought refinancing of
a portion of the Statewide/ICB mortgage debt and applied for a mortgage loan
with Noble.  As part of this refinancing
transaction, Banks conveyed the Blodgett Property back to Houston Kaco on
October 9, 2007.  On the same date, Nobel
loaned $172,250.00 to Houston Kaco, secured by a deed of trust on the
property.  The Noble mortgage deed of
trust was recorded in the real property records of Harris County on November 2,
2007.  

Out of the new loan proceeds
supplied by Noble, three pre-existing liens were paid off and released: (1)
$130,000.00 towards balance due to ICB (as assignee of Statewide’s lien
recorded in the real property records on May 3, 2005), (2) $2,545.40 for
balance due on a judgment in favor of Unovate Inc. evidenced by an abstract of
judgment recorded in the real property records on October 5, 2004, and (3)
$9,982.39 to satisfy unpaid property taxes, secured by superior tax liens.    

 Unbeknownst to Noble, on October 30, 2006,
Financial Holdings, Inc. had obtained a default judgment against Banks in the
County Civil Court at Law No. 2 of Harris County, Texas.  Financial Holdings did not file an abstract
of that judgment in the real property records. 
It did, however, obtain an execution and order of sale on July 5, 2007,
which resulted in a constable’s sale of the property on September 4, 2007.  The high bidder of $18,000.00 was
Whitfield.  The sale was documented in
the litigation records of Case No. 866,463 in the County Civil Court at Law No.
2 by the constable’s filing of a “return of execution” on September 11, 2007.  On November 14, 2007, the constable prepared
a deed transferring the Blodgett Property to Whitfield, which Whitfield recorded
in the real property records on December 31, 2007.  That December 31, 2007 filing was the first
time any reference to the Financial Holdings Judgment, lien, or sale to
Whitfield appeared in the real property records, and it was after Noble’s interest
was recorded in the real property records. 
On January 14, 2008, the Whitfields transferred title of the Blodgett
Property to their company D&M. 

After filing D&M’s deed in the
real property records, Whitfield posted “No Trespassing” signs at the Blodgett
Property.  Around the same time, Noble
foreclosed on Houston Kaco’s note secured by the Blodgett Property.  Upon finding Whitfield’s signs on the
property, Nobel’s owner, Darrell Daik, called Whitfield and, for the first time,
the parties discovered that they had competing claims to title of the Blodgett
Property.         

THE TRIAL COURT PROCEEDINGS

D&M filed a trespass to try
title suit against Noble, requesting that D&M be declared the fee simple
owner of the property.  Noble asserted,
as an affirmative defense, that it was a bona fide mortgagee and/or bona fide
purchaser of the Blodgett Property and, as such, its interest was taken free
and clear of D&M’s unrecorded claims.  

Noble also asserted a counterclaim
against D&M and asserted third-party cross-claims against Whitfield and his
wife, requesting the court quiet title to the property by extinguishing the
deeds transferring the Blodgett Property to Whitfield and D&M.  Alternatively, if title remained vested in
D&M, Noble requested that the court grant it a $142,527.79 subrogation
lien, to reimburse Noble the liens it satisfied when it refinanced the Blodgett
Property, i.e., $130,000 to IBC, $9,982.39 to taxing authorities, and $2,545.40
to extinguish the Unovate Judgment lien. 
In answering these claims, D&M argued that Noble knew, or should
have known, of its and Whitfield’s ownership of the Blodgett Property because the
underlying judgment, though unrecorded in the real property records,
nonetheless was of public record in the Harris County Civil Court civil court
records.  D&M further denied that
Noble is subrogated to any prior liens.  

The case was tried to the bench
with Whitfield, Daik, and Banks testifying. 
  

A.  
Whitfield’s testimony

Whitfield testified that he first
located the Blodgett Property on a constable office’s list of properties to be
auctioned.  Before bidding on the
property, Whitfield did not commission a professional title search, but he did
research himself to determine what liens might burden the property by looking
at (1) the real property records, (2) tax records, and (3) the County Court at
Law No. 2 docket of the Financial Holdings lawsuit giving rise to the
constable’s foreclosure sale.  The only lien
he located in the real property records was the abstract of the Unovate
Judgment, although he stipulated at trial that Statewide’s mortgage lien was
properly filed and of record at the time he bought the property putting him on
notice of that lien.  The tax records,
according to his research, revealed taxes to be “fairly current.”  Finally, he testified that, while there was
no abstract or other reference to the Financial Holdings Judgment in the real
property records, he believed that “by giving Financial Holdings the right to
foreclose on Kenneth Banks’ property at 1923 Blodgett,” the county court at law
“had already decided that Banks was the owner of the property.”  Whitfield knew at the time of the foreclosure
sale that he would be responsible for satisfying any outstanding liens if he
bought the Blodgett Property, and he testified that he was unsure whether he
would have bid on the property had he known about the approximately $196,000 deed
of trust to Statewide Mortgage.  

After submitting the winning bid of
$18,000 for the Blodgett Property at the constable’s sale on September 4, 2007,
Whitfield paid with a cashier’s check and received a receipt.[1]  He testified about several follow-up
conversations he had with the constable’s office over the next couple of months
requesting his deed.  The first deed
produced by the constable in November 2007 misspelled Whitfield’s name.  He later received a corrected “Deed Under
Execution,” dated November 14, 2007, which he filed in the real property
records on December 31, 2007.  A couple
of weeks later, he executed and filed in the real property records a deed
transferring the Blodgett Property to D&M, an investment company owned by him
and his wife.    

Whitfield testified that, shortly
after purchasing the Blodgett Property, he walked around the property and spoke
with neighbors who indicated that someone lived there.  Although he could tell the property was
occupied, he was never able to speak to the occupants because they would not answer
the door.  After filing D&M’s deed,
he left “No Trespassing” notices at the property stating that the property was
under D&M’s ownership pursuant to an execution sale.  These notices were torn down two or three
times.  Finally, in March 2008, Daik
called him claiming that Noble owned the Blodgett Property.

B.  
Banks’s testimony

Banks—the prior owner of the Blodgett Property—owns Houston Kaco, a construction renovation company that also purchases
property for resale.  He testified that
he did not receive notice of the Financial Holdings default judgment against
him and that he did not learn about it or the resulting judgment execution sale
until he found one of D&M’s “No Trespassing” signs in his yard well after
he had closed his refinancing loan with Noble. 
While he agrees that his correct address is listed on the constable
records, he did not receive or cash the $390.35 check that constable’s records
reflect were disbursed to him as surplus from the foreclosure sale.  When he signed documents at the closing of
his refinancing with Noble attesting that no pending litigation or undisclosed
liens or encumbrances existed, he believed those statements to be true.  

C.  
Daik’s testimony         

Daik owns Noble Mortgage.  Noble is primarily in the business of making
short-term loans—for a year or less—to
investors who are renovating and reselling properties.  He testified that John Shively—a broker with whom Noble works closely with and
at times shared office space—first
presented him with a proposed refinance deal for Banks on his Blodgett Property
mortgage.  The application was initially
in Banks’s name individually (although the loan was later taken in the name of
Houston Kaco) and was only partially completed and unsigned.  Daik testified that the application is one of
several different forms the company has used and “not one that [it] require[s]
be filled out completely.”  

Daik testified to his understanding at that time that Banks’s current
mortgage holder, Statewide, had gone out of business and sold at least part of
its portfolio to IBC.  “IBC was trying to
get out of these loans” that it did not want to keep in its portfolio and was
thus unwilling to renew Banks’s loan on the Blodgett Property that had already
ballooned.  Banks needed to move the loan
to a different lender to cover the time for him “to do some cosmetic repairs
and put the house on the market to be sold.” 
After evaluating the loan, Noble determined that the payoff of the
Statewide/IBC existing lien, the Unovate Judgment, the back taxes, and the
$23,000 Noble was going to hold back for repairs exceeded the amount Noble was
willing to lend on the Blodgett Property. 
Statewide thus agreed to accept a partial payoff of $130,000 and retain
a $25,000 loan to Banks that would be subordinated to Noble’s interest. 

As part of its due diligence, Daik testified that Noble ordered an
appraisal, a survey, and a title commitment. 
The title commitment disclosed three liens—the Statewide/IBC mortgage, property
tax liens, and the Unovate lien—that Noble required be satisfied at closing.  Daik testified that nothing in his
investigation, the title report, or the closing put him on notice that another
lien existed or that there had been a foreclosure sale of the Blodgett
property.  He testified that Noble
followed all its standard procedures in making the loan, that he did not know at
the time of closing about the Financial Holdings Judgment, and that Noble acted
in good faith with regard to all parties involved.  He relied upon both the title search and
Banks’s sworn statements at closing that no other encumbrances existed on the
property.       

While Noble sometimes obtains credit reports on borrowers before lending
money, he could not locate one in the file on this transaction and did not
recall there being one.  When asked why
he did not require a credit report that might have placed him on notice of the
Financial Holdings Judgment, he explained that Noble’s making loans without a
credit report or payment history is not unusual because, as an equity-based
lender, Noble’s focus in lending is on the value of the property itself, rather
than the payment history or credit-worthiness of the borrower.  Daik agreed that, had Noble done a credit
check on Banks, it “maybe” would have discovered the Financial Holdings
Judgment.

Daik testified that, after making two payments, Banks defaulted on the
loan.  Banks executed a “Warranty Deed in
Lieu of Foreclosure” transferring the Blodgett Property from Houston Kaco to
Noble.  Shortly thereafter, Noble
foreclosed its lien to extinguish IBC’s subordinated lien and anything that
might have levied on the property between the time of its loan and the
foreclosure. 

D.  
The trial court’s judgment and findings

On September 4, 2009, the court
entered judgment (1) divesting Noble of title to the Blodgett Property, (2)
finding D&M has “valid, subsisting, good, and indefeasible title to the
property, subject to subrogation rights,” and (3) declaring that Noble “is
subrogated in the total amount of $142,527.79 to liens on the property, which are
senior and superior to any title interest of claim of D&M.”  Specifically, the court granted Noble the
following subrogation interests:

A.   Lien by subrogation in the
amount of $130,000 for payoff of the debt secured by that Deed of Trust,
Security, Agreement, and Assignment of Rents from Houston Kaco, Inc. to the
Trustee for Statewide Capital Investments, LLC, filed at Clerk’s File No.
Y456278 on May 10, 2005, in the Real Property Records of Harris County, Texas.

 

B.   Lien by subrogation in the
amount of $9,982.39 for payoff of unpaid property taxes for tax years 2005 and
2006, as secured by the senior and superior tax liens of Harris County and
related taxing authorities under Chapter 32, Texas Property Tax Code.

 

C.   Lien by subrogation in the
amount of $2,545.40 for payoff of an Abstract of Judgment lien, as recorded at
Clerk’s File No. X965928 on October 5, 2004, in the Real Property Records of
Harris County, Texas.   

 

The court further recognized that
Noble is entitled to judicial foreclosure of its lien right by subrogation, but
that D&M can acquire a release of the subrogation lien and divest Noble of
its right to foreclosure by paying to Noble $142,527.79 by December 26,
2009.  

After the trial court denied Noble’s
motion for new trial, the parties filed cross-notices of appeal.  The court then made the following Findings of
Facts and Conclusions of Law:

Findings of Fact

1.       The sale of . . . 1923
Blodgett Street, Houston, Texas 77004 (“the Property”) as under Execution to
satisfy the Default Judgment in Cause No. 866463 in the County Court at Law No.
2, Harris County, Texas, in favor of Financial Holdings, Inc, against Kenneth
Banks (“Banks”) as Defendant was published in the newspaper.

2.       The Execution and order of
sale and Officer’s Return of Execution on the sale of the Property to satisfy
the Judgment were filed in the records of the County Court at Law No. 2 on
September 11, 2007.

3.       Through no fault on his
part, Danny K. Whitfield, Sr. did not receive a Deed Under the Execution until
late November 2007.  The Deed Under the
Execution misspelled Danny K. Whitfield, Sr.’s name and had to be corrected.

4.       On December 31, 2007, the
corrected Deed Under the Execution from May Walker, Constable of Precinct 7, to
Danny K. Whitfield, Sr. was issued and recorded in the Property Records of
Harris County, Texas.  

5.       Danny K. Whitfield, Sr. left
signs on the Property giving notice of possession by D&M Vision
Investments, LLC, but the signs were removed. 


6.       Banks, Houston Kaco, Inc.,
and Noble Mortgage & Investments, LLC (“Noble Mortgage”) had constructive
notice of Danny K. Whitfield, Sr.’s title to the Property before entering into
any transactions involving a property interest in the Property.

7.       In August 2007, Noble
Mortgage began having discussions with a loan broker and Banks about
refinancing the loan Statewide Capital Investments, LLC had made to Houston
Kaco, Inc. to finance the purchase of the Property.

8.       At that time, International
Bank of Commerce had succeeded to the interests of Statewide Capital
Investments, LLC under the note. 
International Bank of Commerce was not willing to renew the note, which
was due.

9.       The loan broker shared
office space with Noble Mortgage.

10.  Banks submitted a Uniform
Residential Loan Application to Noble Mortgage in connection with proposed
refinancing.  Banks did not complete that
part of the application that required that he disclose whether he was a party
to a lawsuit and did not sign the application. 

11.  The application was for a
loan to Banks individually; subsequently, however, Banks requested, and Noble
Mortgage agreed, that the loan be made to Houston Kaco, Inc.  Noble Mortgage did not require that Houston
Kaco, Inc. complete and sign a loan application.  No one at Noble Mortgage met with Banks personally
before the closing.

12.  Houston Kaco, Inc.,
defaulted on note payments to Noble Mortgage & Investments, LLC.

13.  Banks, Houston Kaco, Inc.,
and Noble Mortgage had actual notice of Danny K. Whitfield, Sr.’s title to the
Property before entering into any transactions involving a property interest in
the Property.

14.  Reasonable inquiry by Noble
Mortgage would have disclosed Danny K. Whitfield, Sr.’s title in the property.

15.  Noble Mortgage did not
acquire an interest in the Property in good faith.

16.  Noble Mortgage did not
acquire an interest in the Property without notice of any third-party claim or
interest.

17.  Houston Kaco, Inc. was not a
bona fide purchaser as against Danny K. Whitfield, Sr.’s prior claims.

18.  Noble Mortgage is not a bona
fide purchaser or mortgagee as against Danny K. Whitfield, Sr.’s prior claims.

Conclusions of Law

1.       Title to the Property vested
in Danny K. Whitfield, Sr. on September 4, 2007.

2.       The Execution and Order of
Sale and the Officer’s Return of Execution on the sale of the Property to
satisfy the Judgment were filed in the records of the Harris County Clerk in
accordance with the Texas Rules of Civil Procedure.

3.       The filing of the Execution
and order of Sale and the Officer’s Return of Execution on the sale of the
Property to satisfy the Judgment in the records of the Harris County clerk was
a record for the purposes of Texas law.

4.       The filing of the Execution
and order of Sale and the Officer’s Return of Execution on the sale of the
Property to satisfy the Judgment in the records of the Harris County clerk
satisfied the recording statute of the Texas Property Code.

5.       Banks, Houston Kaco, Inc.,
and Noble Mortgage had constructive notice of Danny K. Whitfield, Sr.’s title
to the Property before entering into any transactions involving a property
interest in the Property.

6.       Banks, Houston Kaco, Inc.,
and Noble Mortgage had actual notice of Danny K. Whitfield, Sr.’s title to the
Property before entering into any transactions involving a property interest in
the Property.

7.       Noble Mortgage did not
acquire an interest in the Property in good faith.

8.       Noble Mortgage did not
acquire an interest in the Property without notice of any third-party claim or
interest.

9.       Houston Kaco, Inc. was not a
bona fide purchaser as against Danny K. Whitfield, Sr.’s prior claims.

10.  Noble Mortgage is not a bona
fide purchaser or mortgagee as against Danny K. Whitfield, Sr.’s prior claims.

11.  The title to the Property
that vested in Danny K. Whitfield, Sr. on September 4, 2007, was equitable and
not subject to recording statutes.

12.  Danny K. Whitfield, Sr.,
Mary W. Whitfield, and D&M Vision Investments, LLC are not estopped to
assert the superiority of Danny K. Whitfield, Sr.’s equitable title.

13.  D&M Vision Investments,
LLC is the successor of Danny K. Whitfield, Sr., and Mary W. Whitfield.

14.  D&M Vision Investments,
LLC is entitled to possession of the Property for which execution will issue in
this case.

15.  D&M Vision Investments,
LLC is the record title owner of the Property.

16.  Noble Mortgage &
Investments, LLC is subrogated in the total amount of $142,527.79 to liens on
the property, which are senior and superior to any title interest or claim of
D&M Vision Investments.

THIS APPEAL

Nobel challenges the court’s
denying it bona fide mortgagee and/or purchaser status.  Specifically, it contends that—because neither the Financial Holdings Judgment
nor any document related to Whitfield and/or D&M’s purchase of the Blodgett
Property was ever recorded in the real property records (and because Noble did
not otherwise know they existed) before Noble took its interest—Whitfield’s title is void against Noble’s later
acquired mortgage and title. 

D&M argues that the trial court
correctly held that D&M enjoys superior title, but argues that the trial
court “erred in holding that Noble Mortgage is subrogated in the total amount
of $142,527.79 to liens on the Blodgett Property.”  Neither contractual nor equitable subrogation
applies here, D&M contends, because Noble came “into court with unclean
hands” and because Noble cannot show the equities are in its favor.  

A.  
Standard of Review   

In an appeal of a judgment rendered
after a bench trial, the trial court’s findings of fact have the same weight as
a jury’s verdict, and we review the legal and factual sufficiency of the
evidence to support them as we would review a jury’s findings. Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994); In re K.R.P., 80 S.W.3d
669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  To determine whether legally sufficient
evidence supports a challenged finding, we must consider evidence that favors
the finding if a reasonable fact-finder could consider it, and we must
disregard evidence contrary to the challenged finding unless a reasonable
fact-finder could not disregard it. See
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  This Court may not sustain a legal
insufficiency, or “no evidence” point unless the record demonstrates (1) a
complete absence of evidence of a vital fact; (2) that the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; 
(3) that the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) that the evidence conclusively establishes the opposite of
the vital fact. Id. at 810.  When a party attacks the factual sufficiency
of an adverse finding on an issue on which it has the burden of proof, it must
demonstrate on appeal that the adverse finding is against the great weight and
preponderance of the evidence. Urista v.
Bed, Bath, & Beyond, Inc., 245 S.W.3d 591, 601 (Tex.  App.—Houston [1st Dist.] 2007, no pet.)

We review conclusions of law by the
trial court de novo and will uphold them if the judgment can be sustained on
any legal theory supported by the evidence.  In re
Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  The trial court’s conclusions of law are not
subject to challenge for lack of factual sufficiency, but we may review the
legal conclusions drawn from the facts to determine their correctness.  Brown v.
Brown, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no
pet.)  We will overrule a challenge to
fact findings that form the basis of a conclusion of law or disposition when
the appellant does not challenge other fact findings that support that conclusion
or disposition. See Britton v. Tex. Dep’t
of Crim. Justice, 95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002,
no pet.).

Statutory construction is a
question of law that the Court also reviews de novo.  In re
Forlenza, 140 S.W.3d 373, 376 (Tex. 2004).  The primary objective in construing any
statute is to determine and give effect to the Legislature’s intent.  Warner
v. Glass, 135 S.W.3d 681, 683 (Tex. 2004).  We begin with the plain and common meaning of
the statute’s words.  Id.; Tex.
Gov’t Code Ann. § 311.011(a) (Vernon 2005). “If the meaning of the
statutory language is unambiguous, we adopt . . . the interpretation supported
by the plain meaning of the provision’s words and terms.”  Fitzgerald
v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999); Alex Sheshunoff Mgmt. Servs., L.P. v.
Johnson, 209 S.W.3d 644, 651-52 (Tex. 2006).  We must, however, be mindful of our duty to
glean “legislative purpose from a consideration of the statutory scheme as a
whole rather than from a literal application or interpretation of any
particular statutory language.” Rylander
v. Fisher Controls Int’l, Inc., 45 S.W.3d 291, 299 (Tex. App.—Austin 2001,
no pet.).

B.  
Noble’s Appeal

In its first and third points of
error, Noble argues the evidence was legally and factually insufficient “to
support the trial court’s ruling that Noble Mortgage was not a bona fide mortgagee
as against the unrecorded claims” of D&M and the Whitfields.  In its second and fourth points, it argues
that the evidence is legally and factually insufficient “to support the trial
court’s ruling that Appellees’ unrecorded claim was not void under the
recording statute, § 13.01, et. seq., Texas Property Code.”  In its fifth point, it argues that the “trial
court erred as a matter of law in ruling that Appellee D&M Vision was
entitled to title and possession of” the Blodgett Property.  

Each of Noble’s five points of
error relate to its complaint that the trial court erred by holding that Noble’s
bona fide status was not proven as a matter of law.

1.    
Applicable Law

Bona Fide Purchaser/Mortgagee

A bona fide purchaser is one who
acquires property in good faith, for value, and without notice, constructive or
actual, of any third party claim or interest. 
Madison v. Gordon, 39 S.W.3d
604, 606 (Tex. 2001); Richards v. Suckle,
871 S.W.2d 239, 242 (Tex. App.—Houston [14th Dist.] 1994, no writ).  In Texas, a bona fide purchaser prevails over
a holder of a prior unrecorded deed or other unrecorded interest in the same
property.  See generally Madison, 39 S.W.3d at 606.  

(a)             
A conveyance of real property or an interest in real property or a
mortgage or deed of trust is void as to a creditor or to a subsequent purchaser
for a valuable consideration without notice unless the instrument has been
acknowledged, sworn to, or proved and filed for record as required by law.  

(b)            
The unrecorded instrument is binding on a party to the instrument, on the
party’s heirs, and on a subsequent purchaser who does not pay a valuable
consideration or who has notice of the instrument.

. . . .

Tex. Prop. Code Ann. § 13.001(a)-(b) (Vernon 2004).  A bona fide purchaser similarly prevails over
a claim under a prior equitable title.  E.g., Richards, 871 S.W.2d at 242; 
H.D. Boswell v. Farm & Home
Sav. Assoc., 894 S.W.2d 761, 766 (Tex. App.—Fort Worth 1994, writ
denied).  

Under section 13.001, a lender can
be a bona fide mortgagee, if the lender takes a lien in good faith, for
valuable consideration, and without actual or constructive notice of
outstanding claims.  Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 769 (Tex. 1983); Gordy v. Morton, 624 S.W.2d 705, 707
(Tex. App.—Houston [14th Dist.] 1981, no writ). 
A bona fide mortgagee is entitled to the same protections as a bona fide
purchaser.  Graves v. Guar. Bond State Bank, 161 S.W.2d 118, 120 (Tex. Civ.
App.—Texarkana 1942, no writ).

Status as a bona fide purchaser is
generally an affirmative defense in a title dispute.  Madison,
39 S.W.3d at 606.  “In a contest between
the owner of an equitable right of title and the holder of legal title,”
however, “the burden of proof as to good faith and consideration is upon the
party asserting the equitable right and not upon the subsequent purchaser of
legal title.”  Gordy, 624 S.W.2d at 707.  

Notice

Notice sufficient to defeat bona
fide purchaser status may actual or constructive.  E.g.,
Flack v. First Nat’l Bank of Dalhart,
226 S.W.2d 628, 631 (Tex. 1950).  “Actual
notice rests on personal information or knowledge.” Madison, 39 S.W.3d at 606. 
“Constructive notice is notice the law imputes to a person not having
personal information or knowledge.” Id.  Constructive notice creates an irrebuttable
presumption of actual notice in some circumstances.  See
HECI Exploration Co. v. Neel, 982 S.W.2d 881, 887 (Tex. 1998) (citing Mooney v. Harlin, 622 S.W.2d 83, 85
(Tex. 1981)).

The Texas Property Code provides
that an “instrument that is properly recorded in the proper county is . . .
notice to all persons of the existence of the instrument.” Tex. Prop. Code Ann. § 13.002. 
Recorded instruments in a grantee’s chain of title generally establish
an irrebuttable presumption of notice.  Ford v. Exxon Mobil Chem. Co., 235
S.W.3d 615, 617 (Tex. 2007); see also
HECI Exploration Co., 982 S.W.2d at 887 (“The need for stability and
certainty regarding titles to real property has led courts to hold that real
property records can constitute constructive notice.”); Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908
(Tex. 1982) (“It is well settled that ‘a purchaser is bound by every recital, reference and reservation
contained in or fairly disclosed by any instrument which forms an essential
link in the chain of title under which he claims.’”).  

“Although a deed outside the chain
of title does not impute constructive knowledge, a person may be charged with
the duty to make a reasonable diligent inquiry using the facts at hand in the
recorded deed.”  Nguyen v. Chapa, 305 S.W.3d 316, 324-25 (Tex. App.—Houston [14th
Dist.] 2009, pet. denied).  “Thus, every
purchaser of land is charged with knowledge of all facts appearing in the chain
of title through which he claims that would place a reasonably prudent person
on inquiry as to the rights of other parties in the property conveyed.”  Id.
at 325.

Good faith

  
 “Texas law does not provide a
definitive explanation for what constitutes ‘good faith’ sufficient to make one
a bona fide purchaser” in the sale of real property context.  Cohen
v. Hawkins, No. 14-07-00043-CV, 2008 WL 1723234, at *5 (Tex. App.—Houston
[14th Dist.] April 15, 2008, pet. denied) (mem. op.).  This Court—addressing the bona fide purchaser defense to a real property fraudulent
transfer claim—has analyzed good faith in
terms of whether a subsequent purchaser is aware of circumstances independent
of the chain of title that would put it on notice of an unrecorded claim.  Hahn v.
Love, 321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)
(“A transferee who takes property with knowledge of such facts as would excite
the suspicions of a person of ordinary prudence and put him on inquiry of the
fraudulent nature of an alleged transfer does not take the property in good
faith and is not a bona fide purchaser.”). Cf.
Downs v. Stevenson, 119 S.W. 315, 317 (Tex. Civ. App. 1909, writ ref’d)
(good faith of party claiming bona fide purchaser status is “measured by his intent
at the time” the subsequent purchaser’s interest was acquired).      

2.     Is Noble a bona fide mortgagee?

Noble challenges here the court’s
factual finding and legal conclusion that “Noble Mortgage is not a bona fide
purchaser or mortgagee as against Danny K. Whitfield, Sr.’s prior claims.”[2]  Noble also challenges, among other conclusions,
the trial court’s determination that the “filing of the Execution and order of
Sale and the Officer’s Return of Execution on the sale of the Property to
satisfy the Judgment in the records of the Harris County Clerk satisfied the
recording statute of the Texas Property Code.” 


On October 4, 2007, Noble’s
security interest in the Blodgett Property was first recorded in the real
property records.  While the Financial
Holdings Judgment was entered on October 30, 2006, almost a year before, it is
undisputed that no one filed an abstract of that judgment in the real property
records.  It is likewise undisputed that—prior to Whitfield’s December 31, 2007 filing
of the “Deed Under Execution” issued by constable transferring Blodgett
Property from Banks to Whitfield in the real property records—there there was no mention of the Financial
Holdings Judgment or the resulting foreclosure sale to Whitfield anywhere in
the real property records. 

Does a Texas Rule of Civil Procedure 656 recording provide constructive
notice?

Whether Noble is a bona fide
mortgagee or purchaser turns largely on the issue of whether recording of a
sale on an execution docket in compliance with Rule 656 of the Texas Rules of
Civil Procedure is a “recording” for the purpose of putting subsequent
creditors and purchasers on constructive notice under sections 13.001 and
13.002 of the Texas Property Code.  As
the parties and trial court recognized, this presents an issue of first
impression in Texas.  The trial court
ultimately concluded that the filing of the Officer’s Return of Execution on
the sale of the Blodgett Property in the records of the Harris County Clerk in
accordance with Rule 656 “satisfied the recording statute of the Texas Property
Code.”  We disagree.

Rule 656 instructs the clerk to
keep a docket of executions, and proscribes penalties for failure to do so:

Rule 656.    Execution Docket

The
clerk of each court shall keep an execution docket in which he shall enter a
statement of all executions as they are issued by him, specifying the names of
the parties, the amount of the judgment, the amount due thereon, the rate of
interest when it exceeds six per cent, the costs, the date of issuing the
execution, to whom delivered, and the return of the officer thereon, with the
date of such return.  Such docket entries
shall be taken and deemed to be a record. 
The clerk shall keep an index and cross-index to the execution
docket.  When execution is in favor or
against several persons, it shall be indexed in the name of each person.  Any clerk who shall fail to keep said
execution docket and index thereto, or shall neglect to make the entries
therein, shall be liable upon his official bond to any person injured for the
amount of damages sustained by such neglect.

 

Tex. R. Civ. P. 656.

D&M argues that the September
11, 2007 “Entry of the Execution and Order of Sale and the Constable’s Return
in the records of the Harris County Court of Law is deemed to be a record and constituted
constructive notice to Noble Mortgage of Whitfield’s prior title.”  To hold otherwise, D&M contends, “would
create a gap in the law” because purchasers “at execution sales . . . have no
control over when a recordable deed is issued.” 
Thus, according to D&M, the burden should be placed upon the
subsequent creditor or purchaser to “simply . . . access[] the civil court
records on the Harris County Clerk’s website as Whitfield had done” which, in
this case, would have revealed the Financial Holdings Judgment and Return of
Execution. 

Noble disagrees, arguing that the a
record of the Constable’s sale has “to be recorded in the Real Property Records of the County Clerk’s Office in order
to constitute constructive notice to third parties.”  It notes the precise rules in the Texas
Property Code and Texas Government Code for recording and indexing of real
property documents identified by statute as the “real property records” and the
stated purpose of indexing as “providing effective notice to all persons of the
existence of the referenced instrument.” Tex.
Prop. Code Ann. § 11.007; id. § 11.004 (clerk must record real property instruments in the order filed
and keep indexes required by law); see
also Tex. Loc. Gov’t Code Ann.
§ 191.001 (Vernon 2008)
(duties of clerk as county recorder); § 191.002 (records to be keep in well-bound book or on microfilm); § 191.006 (public must have access to records); § 192.001 (clerk must “record each deed,
mortgage, or other instrument that is required or permitted by law”); Stemper, Frank, A Handbook for Texas Abstracters and Title Men 15 (3d Ed.
1983) (“The purpose of filing in this office, and of recording and indexing, is
to give notice to the public that such a document exists and that the title to
the land has changed or been affected. 
Here, the public may discover these changes.”)

Noble also points us to numerous
cases deeming certain types of documents outside the real property records as
insufficient to import constructive notice of real property interest.  E.g.,
Woodward v. Ortiz, 237 S.W.2d 286,
289 (Tex. 1951) (judgment recorded only in the civil minutes of the district
court was not constructive notice of real property interest conveyed in
judgment);  Permian Oil Co. v. Smith, 73 S.W.2d 490, 504
(Tex. 1934) (clerk’s recording of court’s judgment partitioning of real
property in the minutes of a district court is not “substantial compliance”
with recording of judgment in real property records for purposes of
constructive notice to those claiming bona fide purchaser status); Stafford v. Lunsford, 53 S.W.3d 906, 908
(Tex. App.—Houston [1st Dist.] 2001, pet. denied) (divorce decree transferring
real property but not filed according to the recording acts does not provide
notice to third parties);  Dutton
v. Kinsley, 124 S.W.2d 446, 449 (Tex. Civ. App.—Fort Worth 1938, no writ)
(unrecorded district court order of partition is not constructive notice to
subsequent purchaser claiming bona fide purchaser status).       

Finally, Noble contends that the
trial court’s conclusion that a “document filed in the litigation records of the County Clerk’s Office constitutes
constructive notice to third parties and title searchers . . . contradicts 150
years of Texas statutory law, case law, and title practice.”  According to Noble, such an “interpretation of
Rule 656 would vitiate the entire body of law about abstracts of judgment”
located in Chapter 52 of the Texas Property Code.  This is because “there would never be any
need for an abstract of judgment to be filed because recording of an instrument
of the litigation records would
suffice.” 

We agree with Noble that recording
under Rule 656 is not a recording for purposes of importing constructive
knowledge to defeat a claim of bona fide purchaser.  Section 13.001 of the Texas Property Code
provides that a real property mortgage or deed is “void as to a creditor or to
a subsequent purchaser for a valuable consideration without notice unless the
instrument has been . . . filed for record as required by law.”  While Rule 656 states that execution recorded
on the execution docket under that rule “shall be taken and deemed to be a
record,” it would be inconsistent with the overall recording scheme long
embodied in the Texas Property Code to hold that because a document is a
“record” under Rule 656, that instrument is “filed for record” under section
13.001.  

As the El Paso Court of Appeals
recently explained after noting that the rule voiding unrecorded interests as
against subsequent bona fide creditors and purchasers has been around since
before Texas was a state, the purpose of the Texas Property Code’s recording
provisions is to make information about claimed interest in land readily
available: 

Texas law has long favored
the purpose of recording acts, which make land title information available to
interested persons. . . . The intention of the recording acts is to compel
every person receiving conveyances of real property to place such an instrument
of record, not only that he may thereby protect his own rights, but also those
of all others who may afterwards seek to acquire an interest in the same
property.  To be effectively recorded, an
instrument relating to real property must be recorded in the public records in
the county in which a part of the property is located.  The recording laws in Texas were meant to
protect innocent purchasers and creditors without notice of the prior transfer
from being injured or prejudiced by their lack of knowledge of the competing
claim. 

 

Sanchez v.
Telles, 960 S.W.2d 762, 767 (Tex. App.—El Paso 1997, pet. denied) (citations
omitted).  

While some cases, such as Sanchez quoted above, refer only to
“record[ing] in the public records in the county,” we read this to refer to the
county real property records rather than the execution docket of the county
court.  See e.g., Baylor v. Tillebach,
49 S.W. 720, 722 (Tex. Civ. App. 1899, no writ) (“It is for the purpose of
notice and protection of innocent purchasers for value that decrees of
partition of real property are required to be recorded in the record of deeds in the county where the
land is situated. . . .” (emphasis added)).  This interpretation is consistent with Texas
courts’ focus on the chain of title in the real property records when determining
whether a subsequent purchaser has constructive notice of a claim to real
property.  See Nguyen, 305 S.W.3d at 324 (“[A] subsequent purchaser is also
charged with [constructive] notice of the terms in the deeds which form an
essential link in his chain of ownership.”). 
                

“‘Chain of title’ has been defined
to be ‘The successive conveyances, commencing with the patent from the
government, each being a perfect conveyance of the title down to and including
the conveyance to the present holder.”  Reserve Petroleum Co. v. Hutcheson, 254
S.W.2d 802, 806 (Tex. Civ. App.—Amarillo 1952, writ ref’d n.r.e.) (quoting Havis v. Thorne Inv. Co., 46 S.W.2d 329,
332 (Tex. Civ. App.—Amarillo 1932, no writ)). 
Under Texas law, a subsequent creditor or purchaser is only deemed on
constructive notice of recorded documents within its direct chain of title that
either reveal the interests of another, or that contain recitals that would put
a prudent purchaser on inquiry notice of another’s interest outside the chain
of title.  E.g., Walters v. Pete,
546 S.W.2d 871, 874 (Tex. Civ. App.—Texarkana 1977, writ ref’d n.r.e.) (“The
deed under which Appellee Pete claims was not in Appellant Walters’ chain of
title and since the Ray-Delamer-Pete deeds contained no ambiguities on their
faces which would put Walters on inquiry about Pete’s claim, the mere
registration of those deeds would not constitute constructive notice that Pete
was claiming the land to which Walters had secured a deed.”).  In other words, absent ambiguities on the
face of a deed, a subsequent purchaser is “not required to look any further
than his own chain of title to determine whether or not he was acquiring good
title to his property.” Id. at 875.

The Texas Supreme Court—in a case in which one party claimed a judgment
adjudicating real property interest filed in the minutes of the district court
defeated the later claim of bona fide purchaser—has explained the significance of the distinct role the clerk plays as
the county recorder of real property records.  
See Permian Oil Co., 73 S.W.2d
at 504.  In that case, the size of the
county at issue dictated that a “single clerk was required to serve as both
district and county clerk.”  Id. 
But the court rejected the argument that a judgment affecting real
property being recorded in the district court minutes constituted constructive
notice of that judgment’s terms to a subsequent purchaser of the property:

Plaintiff in error insists
that where there is but one office and one officer a record of the judgment in
the minutes of the district court would be a substantial compliance with the
terms of the statute.  We are unable to
agree with this contention.  While there
was but one officer, he was required to discharge the duties incumbent upon
both district and county clerks. . . . The judgment in question was not
recorded in the office of the county clerk as required by the statutes, unless
it was incorporated in some record kept by this officer in the performance of
the duties imposed upon a county clerk. 

 

Id.

Given that a civil County Court of
Law execution docket is not a repository for chain-of-title documents, and
given the “well-established rule that a deed or instrument lying outside of his
chain of title imports no notice,” Nguyen,
305 S.W.3d at 324, we hold that recording on the execution docket of the county
civil court of law is not a recording for purposes of importing constructive
notice to subsequent creditors and purchasers.

The only case D&M cites does
not compel a different result.  In Goggans v. Green, the court addressed
whether entry on the execution docket of a sheriff’s sale could substitute as
evidence of a writ authorizing the sale. 
165 S.W.2d 928, 929 (Tex. Civ. App.—Texarkana 1942, no writ).  At issue in Goggans was the requirement that, to “deraign title through a
sheriff’s deed, it is necessary to show both the judgment and the writ issued
thereon by authority of which the sheriff made the sale.”  Id.
at 928.  The judgment was entered into
evidence, but the writ had been lost and the plaintiff sought to use recording
on an execution docket as substitute proof of the writ.  Id.  The court held this substitution was
permissible because the “execution docket is an official record . . . and is
held to be evidence of the issuance of such writs.”  Id.
at 929.  While Groggans does, as D&M claims, “address[] the significance of
the execution docket,” we agree with Noble that it is inapposite as it “says
nothing about the recording statute, the bona fide purchaser doctrine, or
constructive notice to third parties.”             

Finally, in response to D&M’s
argument that our holding would “create a gap in the law” leaving purchasers
from execution sales vulnerable during the period between their purchase and when
a recordable deed is issued, we note that Chapter 52 of the Texas Property Code
is expressly devoted to abstracts of money judgments and designed to offer
protection in this very situation. 
“Under Texas law, no lien is created by the mere rendition of a
judgment.” Wilson v. Dvorak, 228
S.W.3d 228, 233 (Tex. App.—San Antonio 2007, pet. denied) (citing Citicorp Real Estate, Inc. v. Banque Arabe
Internationale D’Investissement, 747 S.W.2d 926, 929 (Tex. App.—Dallas
1988, writ denied)).  “To create an
enforceable lien against real property owned by the judgment debtor, the
judgment creditor must comply with the requirements of Chapter 52 of the Texas
Property Code.”  Id.  “The judgment creditor’s
first step in creating a judicial lien is to obtain an abstract of the
judgment.”  Id. (citing Tex. Prop. Code
Ann. § 52.002 (Vernon 2007)).   

“The purpose of an abstract of
judgment is to create a lien against the debtor’s property and to provide notice to subsequent purchasers and
encumbrancers of the existence of the judgment and lien.”  Id.
(emphasis added) (citing Olivares v. Nix
Trust, 126 S.W.3d 242, 247 (Tex. App.—San Antonio 2003, pet. denied)).  Section 52.004 of the Texas Property Code
mandates that the clerk “immediately record in the county real property records
each properly authenticated abstract that is presented for recording” as well
as simultaneously index the filing with reference to the plaintiff and
defendant.  “When properly recorded and
indexed, an abstract of judgment creates a judgment lien that is superior to
the rights of subsequent purchasers and lien holders.”  Wilson,
228 S.W.3d at 233-34.  While there is no
information in the record here about why Financial Holdings did not follow
Chapter 52’s procedures for abstracting its judgment that ultimately led to the
foreclosure sale to Whitfield, had that judgment been properly abstracted and
recorded, subsequent creditors and purchasers—including Noble—would have
been charged with notice of it.  Although
Chapter 52 has no application here, its existence answers D&M’s concern
about the vulnerability of purchasers at foreclosure sales while waiting for
recordable deeds.

Is there other evidence to support a finding of notice?

In addition to arguing that
recording on the execution docket operated as constructive notice to Noble,
D&M contends that there is other evidence to support a finding that Noble
was on actual or constructive notice of its interest that defeats bona fide
mortgagee or purchaser status.  Because
D&M does not argue that anything in the Blodgett’s Property’s chain of
title would put Noble on inquiry notice of the interest held by Financial
Holdings, Whitfield, or D&M, we interpret this argument as contending that
Noble did not take its interest in good faith because it allegedly had
knowledge of facts outside the chain of title that would put a prudent person
on inquiry notice of unrecorded interests in the property.  See Hahn,
321 S.W.3d at 527. 

 D&M points to the following: (1) Noble
“did not require a credit report or payment history for Banks or [Houston] Kaco,”
(2) Noble “knew that in two and a half years, the Blodgett property had gone
from [Houston] Kaco to Banks and would now go back to [Houston] Kaco again as
part of the plethora of transactions surrounding” Noble’s refinancing, and (3)
Banks did not fill out part of the application asking whether he was party to
any judgment.  D&M acknowledges the
testimony of Daik, Noble’s principal, that he did not know anything about the
Financial Holdings Judgment, and that he relied upon a third-party title search
and the three documents Banks signed at closing attesting to the fact that
there were no additional liens, judgment, or encumbrances against the Blodgett
Property.  D&M insists, however, that
under the circumstances, Noble’s duty extended beyond reliance on a title search,
even if that is the standard in the industry. 

In support of its argument, D&M cites only an unpublished
Fifth Circuit case concluding that a purchaser’s open, visible and unequivocal possession of real property deprived a
party with a later-acquired interest of bona fide purchaser status and noting
that the duty of inquiry, in that circumstance, could exceed banking industry
standards, which only required a title search and not inspection of the
property.  Bank of Am. v. Schwartz, 194 F. App’x 217 (5th Cir. 2006).  Schwartz’s
holding is consistent with Texas courts’ recognition that open, exclusive, and
unequivocal occupation of property by a third party can operate as constructive
notice of that party’s claims to the property and defeat a subsequent purchaser’s
claim bona fide status.  Madison, 39 S.W.3d at 607.  Notice by possession, however, is not at
issue in this case.

We hold that none of the evidence
D&M points to is evidence that would put a mortgagee or purchaser on
inquiry notice that an unrecorded money judgment in the County Court at Law
records existed.  Rather, the evidence
conclusively demonstrates that Noble took its interest in good faith, without
notice of the Financial Holdings Judgment or the subsequent sale to Whitfield
or transfer to D&M.  D&M’s deed
is thus void as to Noble. Tex. Prop.
Code Ann. § 13.001(a).
 

We therefore sustain Noble’s first
and second issues on appeal, holding that the evidence is legally insufficient
to support the trial court’s ruling that Noble is not a bona fide purchaser and
that Noble’s bona fide status was proven as a matter of law.  We also sustain its fifth issue and hold that
the trial court erred in ruling that D&M was entitled to title and possession
of the Blodgett Property.  

C.  
D&M’s Appeal

D&M’s complaints on appeal
about the trial court’s granting Noble subrogation liens burdening D&M’s
title are dependent upon our affirming the trial court’s holding that title to
the Blodgett Property is vested in D&M. 
Because we have reversed that holding and instead hold that title was
properly vested in Noble, D&M’s points on appeal complaining of liens in
Noble’s favor are moot.  The judgment
should remove reference to these liens.    

CONCLUSION

We reverse the trial court’s
judgment holding that D&M was entitled to possession and title of the
Blodgett Property and render judgment that Noble is instead entitled to
possession and title of the Blodgett Property. 
We remand to the district court for entry of judgment consistent with
this opinion.         

    

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 











[1]
          The constable’s receipt
reflected the following disbursements from the $18,000: $17,186.28 to Financial Holdings, $238.37
to the constable, $175.00 to cover publication costs, and $390.35 to Banks.

 





[2]
          D&M asserts that Noble “does
not specifically challenge the [trial court’s] finding . . . [that] ‘Noble
Mortgage did not acquire an interest in the Property in good faith.”  A challenge to the trial court’s finding that
Noble did not acquire its interest in the Blodgett Property in good faith,
however, is fairly subsumed within Noble’s arguments that the trial court erred
in finding it was not a bona fide mortgagee or purchaser, as good faith is a
required element of that bona fide status. 
Tex. R. App. P. 38.1(f); Jarvis v. Feild, 327 S.W.3d 918, 928
(Tex. App.—Corpus Christi 2010, no pet.) (appellate briefs “are to be construed
reasonably, yet liberally, so that the right of appellate review is not lost by
waiver.”)