Opinion filed March 29,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00123-CV

                                                    __________

 

                                           C.R.
JONES, Appellant

 

                                                             V.

 

                DALE B.
CLEM, BOBBY CLEM AND RICKY CLEM,

                             
D/B/A B. R. & D. FARMS, Appellees



 

                                   On
Appeal from the 42nd District Court

 

                                                          Coleman
County, Texas

 

                                                       Trial
Court Cause No. 4602

 



 

M E M O R A N D
U M   O P I N I O N

 

            Dale
B. Clem, Bobby Clem and Ricky Clem, d/b/a B. R. & D. Farms, sued C.R. Jones
and Norma L. Smith to recover for production royalties that should have been
paid to them in connection with their mineral interest in a twenty-acre tract
of land in Coleman County.  The trial court granted appellees’ motion for a
directed verdict against Jones and Smith and entered judgment against them both. 
Jones has perfected an appeal from that judgment.  Smith did not perfect an appeal. 
We affirm.




 

Background
Facts

            J.A.
(Adrian) Evans and his wife, Leola Evans, owned the mineral interest in a twenty-acre
tract of land in Coleman County.  The mineral interest was subject to an oil
and gas lease. During bankruptcy proceedings filed by J.A. and Leola, the
trustee in bankruptcy sold the interest to appellees and delivered a quitclaim
deed to them dated December 28, 1990.  The quitclaim deed was recorded in the
Coleman County Clerk’s office on January 11, 1991. 

            Ricky
Clem testified that, except for recording the quitclaim deed, the appellees did
not notify anyone that they had purchased the interest.  Nevertheless, in
January or February 1991, appellees began to receive royalty payments from the
purchaser, Western Gas.  They continued receiving payments through 1999, and then
the payments stopped.

            Ricky
also testified that, when the payments stopped, the appellees assumed that the
production had ceased and the well had been shut down.

            Jones
testified that the lease was assigned to him in September 2002 and that his
predecessor subsequently sent him what Smith called a division order.   Adrian
Evans was shown as the owner of a 0.1250000 royalty interest.  When he sent out
the first checks after he took over the lease, Jones mailed a royalty check to
Adrian; it went to Smith, Adrian’s daughter.[1] 
Smith informed Jones that Adrian was deceased and that she was the executor as
well as the sole beneficiary of Adrian’s estate.  Smith told Jones to send her
the royalty checks.  Jones did not recall what documentation Smith sent him,
but after he received it, he began sending the royalty checks to her that eventually
totaled over $40,800.

            In June 2008, appellees learned that they were being sued for unpaid taxes on the property
interest.  Appellees went to the tax office in Coleman County, and it was then
that they were told that the well was still producing and that they owed taxes
on the interest.  Appellees paid those taxes.  Subsequently, appellees located
the well.  The lease had been transferred several times before eventually being
transferred to Jones.  Appellees did not know Jones, but after some
investigation, they were able to locate him. 

             Appellees
explained to Jones that they had previously received royalty payments and
showed Jones the documentation of their ownership.  Jones showed appellees a
list that showed the payments that he had made to Smith.  Jones did not pay appellees
any of the payments that he had paid out to Smith.

            Appellees
filed a lawsuit against Jones and Smith.  Ultimately, the trial court granted
appellees’ motion for directed verdict and entered judgment against Jones for
the sum of $27,169.38 and against Smith for $11,376.15.  The trial court also
granted judgment in favor of Jones against Smith in the amount of $27,169.38. 
The trial court denied Jones’s motion for directed verdict.

Issues
on Appeal

            Jones
presents us with a single issue on appeal.  That single issue, “Did the trial
court err in rendering judgment for Plaintiff/Appellee against
Defendant/Appellant Jones,” contains four subparts, three of which deal, in one
way or another, with the appellees’ failure to furnish title documents to
Jones.  The final subpart addresses sufficiency of the evidence to support the
directed verdict in favor of appellees.

Standard
of Review

            In
reviewing a trial court’s directed verdict, the appellate court examines the
evidence in the light most favorable to the person suffering an adverse
judgment and decides whether there is any evidence of probative value to raise
an issue of material fact on the question presented. Exxon Corp. v. Emerald
Oil & Gas Co., L.C., 348 S.W.3d 194, 217 (Tex. 2011).  If the appellate
court finds that there is any evidence of probative value that raises a
material fact issue, then the judgment must be reversed and the case remanded
for the jury’s determination of that issue.  Szczepanik v. First S. Trust
Co., 883 S.W.2d 648, 649 (Tex. 1994); White v. Sw. Bell Tel. Co.,
651 S.W.2d 260, 262 (Tex. 1983); Collora v. Navarro, 574 S.W.2d 65, 68
(Tex. 1978).

Discusson

            Jones
argues that the trial court erred because the appellees were required by Paragraph
7 of the lease to provide him with notice of any change in ownership of the
property or of the right to rentals or royalties.  He contends that they should
have taken nothing because the lease terms provided him an affirmative defense
to being charged with constructive notice of a duty to pay royalties to the
appellees.  Our analysis of this issue requires us to interpret Paragraph 7 of
the lease.  When a contract is not ambiguous, the construction of the written
instrument is a question of law for the court.  See Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983); City of Pinehurst v. Spooner Addition Water Co.,
432 S.W.2d 515, 518 (Tex. 1968); Myers v. Gulf Coast Minerals Mgmt. Corp.,
361 S.W.2d 193, 196 (Tex. 1962). We review the trial court’s legal conclusions
de novo.  See Barber v. Colorado Indep. Sch. Dist., 901 S.W.2d 447, 450
(Tex. 1995).  We give terms their plain, ordinary, and generally accepted
meaning unless the instrument shows that the parties used them in a technical or
different sense.  W. Reserve Life Ins. Co. v. Meadows, 261 S.W.2d 554,
557 (Tex. 1953).  This court will enforce the unambiguous document as written. Sun
Oil Co. (Del.) v. Madeley, 626 S.W.2d 726, 728 (Tex. 1981).

            Paragraph
7 of the lease agreement unambiguously states:

            The
rights of either party hereunder may be assigned in whole or in part and the
provisions hereof shall extend to the heirs, executors, administrators,
successors and assigns, but no change or division in ownership of the land,
rentals or royalties, however accomplished, shall operate to enlarge the
obligations or diminish the rights of lessee. No such change or division in the
ownership of the land, rentals or royalties shall be binding upon lessee for
any purpose until such person acquiring any interest has furnished lessee with
the instrument or instruments, or certified copies thereof, constituting his
chain of title from the original lessor.

 

            Change
in ownership clauses that relieve a lessee from liability for the mispayment of
royalty or delay rentals, when the mispayment is caused by a change in
ownership and no notice is given to the lessee of such change, have been upheld
and enforced. Cassity v. Smith, 193 S.W.2d 991 (Tex. Civ. App.—Texarkana
1946, writ ref’d).  Where such a provision is included in the lease, the lessee
is not charged with constructive notice from the record of a subsequent
transfer by the lessor.  Brandt v. Roxana Petroleum Corporation, 29 F.2d
980 (5th Cir. 1929); Jackson v. United Producers’ Pipe Line Co., 33
S.W.2d 540 (Tex. Civ. App.—Fort Worth 1930, writ ref’d). 

            Appellees
concede that Western Gas, the lessee at the time that appellees took ownership
of the royalty interest, could have invoked this provision to “act as though no
such instruments ha[d] been executed” until it was served with written notice
thereof.  Jackson, 33 S.W.2d at 544.  However, Western Gas apparently waived
this right when it somehow learned that appellees had purchased the royalty
interest and began paying them the royalties, even though appellees had given
no formal notice.

             Appellees
argue that Jones was not entitled to notice under Paragraph 7 because it
applies only when there has been a “change or division” in the ownership of the
land during the lease term, and there has been none since Jones took over the
lease.  We agree.  There was no change of ownership during Jones’s tenure as
lessee.  To the contrary, the appellees were the owners of the royalty interest
at the time Jones took the lease and at all times since.  Appellees’ ownership was
a matter of public record when Jones acquired the lease; appellees’ deed was
recorded in the Coleman County Clerk’s office.  Jones does not dispute this
fact.  Appellees were already in the chain of title when Jones took the lease,
and their ownership is something that would have been easily discoverable by
searching the county clerk’s records or by obtaining a title opinion.  As
appellees have pointed out, this is something that Jones had a statutory duty
to do in order to provide notice to the payees of the existence of a new payor. 
Tex. Nat. Res. Code Ann. § 91.407
(West 2011). 

            To
read the lease provision as Jones asks us to do would be contrary to the
policies underlying the doctrine of constructive notice. That doctrine is
applied when a person knows where to find the relevant information, and had a
duty to find that information, but failed to seek it out.  See Little v.
Smith, 943 S.W.2d 414, 421 (Tex. 1997).  Under the facts of this case, we
find, as a matter of law, that Jones did not establish that Paragraph 7 of the
lease constituted an affirmative defense to the appellees’ claims.  Subparts A,
B, and C of Jones’s issue are overruled. 

            In
subpart D of Jones’s issue, he argues that there was no evidentiary support in
the record upon which the trial court could base its directed verdict. 
Alternatively, Jones argues that the directed verdict was so against the great
weight and preponderance of the evidence as to be unjust.  We note that Jones’s
alternative argument addresses factual sufficiency, which has no place in the review
of a directed verdict.  We will address Jones’s argument using the standard of
review previously set out in this opinion.  We must examine the record in the
light most favorable to Jones and determine whether there is any evidence of
probative force that raises a material fact issue.  See Exxon, 348
S.W.3d at 217. 

            The
undisputed evidence is that the appellees did not personally furnish any
documents to any lessee until 2008, when they showed Jones the documents reflecting
that they had purchased the interest in late 1990.  However, the deed to their
interest was on file with the county clerk when Jones took the leasehold
interest from Gene Worthington in 2002; it had been on file since 1991, shortly
after the appellees purchased the interest.  The filing of a deed is notice to
all persons.  Alkas v. United Sav. Ass’n of Tex., Inc., 672 S.W.2d 852,
856 (Tex. App.—Corpus Christi 1984, writ ref’d n.r.e.); First Sav. &
Loan Ass’n of El Paso v. Avila, 538 S.W.2d 846, 849 (Tex. Civ. App.—El Paso
1976, writ ref’d n.r.e.).  It is a conclusive presumption of law that the
proper and legal recording of a deed in the county where the land lies is
constructive notice of the recorded deed’s existence.  White v. McGregor,
50 S.W. 564 (Tex. 1899); Quarles v. Hardin, 249 S.W. 459, 462 (Tex. Comm’n
App. 1923, judgm’t adopted).  The doctrine of constructive notice creates an
irrebuttable presumption of actual notice of certain matters.  See HECI
Exploration Co. v. Neel, 982 S.W.2d 881, 887 (Tex. 1998); Noble Mortgage
& Invs., LLC v. D & M Vision Invs., LLC, 340 S.W.3d 65,
76 (Tex. App.—Houston [1st Dist.] 2011, no pet.).   

            Jones
was charged with constructive notice of appellees’ right to be paid royalties.  His
reliance on the purported “division of interest” or “division order” document
was misplaced.   First, the document contained a disclaimer, on its face, of
any warranty that it was correct or reflected record title to the lease.  Second,
in order to rely upon a division order, Jones had the obligation to submit it
to the payees for signature.  Tex. Nat.
Res. Code Ann. § 91.402(c)(1) (West 2011).  The document relied upon by Jones
was not signed by any party and was, thus, not a division order at all.  Tex. Nat. Res. Code Ann. § 91.401(3)
(West 2011) (“‘Division order’ means an agreement signed by the payee directing
the distribution of proceeds . . . .”).  The facts established as a matter of
law that Jones had constructive notice of appellees’ interest.  Considering the evidence in the light most favorable to Jones, we hold that there was
no probative evidence raising an issue of material fact and that the trial
court did not err in directing a verdict in favor of appellees.  Subpart D of
Jones’s issue is overruled.

            The
judgment of the trial court is affirmed.

 

                                                                                    PER
CURIAM

 

March 29, 2012

Panel consists of: Wright, C.J., 

McCall, J., and Kalenak, J. 









                [1]Smith is also Dale’s and Ricky’s maternal aunt; Adrian
Evans was their maternal grandfather.