**GENERAL ELECTRIC CREDIT CORPO-RATION, Appellant,**

v.

**FIRST NATIONAL BANK OF DUMAS, Appellee.**

**No. 7873.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 30, 1968.

**738**

Edwards & Brackett and Carson Smith, Lubbock, for appellant.

Lovell, Lyle & Cobb and R. A. Renfer, Jr., Dumas, for appellee.

CHAPMAN, Justice.

This is an appeal by General Electric Credit Corporation from a summary judgment rendered for First National Bank of Dumas in a suit by appellant against the bank for conversion of an Allis-Chalmers D–19 L.B. Tractor, Serial No. 14474.

The briefs refer to "The Statement of Facts", "Revised Statement of Facts", "Revised Statement of Fact" and to certain pages in the transcript designated "Revised Statement of Facts".

 We believe the quoted designations in the briefs intended references to the statutory summary judgment component called "Admissions on File". Rule 166–A, Vernon's Texas Rules Annotated makes no provision for a statement of facts. A summary judgment proceeding is not a conventional trial in which witnesses are heard in open court and documentary evidence is offered and received in evidence, from which a statement of facts is developed. Richards v. Allen, 402 S.W.2d 158 (Tex. Sup., 1966). The summary judgment components, one or all of which may be present, are the pleadings, depositions, admissions on file and affidavits. Rule 166–A (c). The term "further testimony" used in Sec. (e) of the rule refers to summary judgment testimony brought before the court in admissions, depositions or affidavits prepared in accordance with the rule, and not to oral testimony and exhibits introduced thereby. Richards v. Allen, supra. These components constitute parts of the transcript, so there is no place in a summary judgment proceeding for a statement of facts.

Prior to or on February 13, 1964, Earnest Bontke contacted LaVerne Gaylord of Farmers Supply and Implement Co. of Stratford concerning the purchase of the D–19 L.B. Tractor in question. On the named date Bontke entered into an oral

agreement for the purchase of the tractor and paid a $500.00 down payment. Gaylord did not have it in stock but ordered it out from the factory immediately. It arrived a few weeks later and was delivered to the purchaser on March 30, 1964. On that date Bontke gave a mortgage to appellee bank on two D–19 Allis-Chalmers Tractors, one of which he had purchased the year previously. The bank filed the mortgage record in Moore County on March 31, 1964.

On April 3, 1964, three days after the bank's mortgage was filed for record, Bontke executed a Purchase Contract and Chattel Mortgage in favor of Gaylord, who assigned the instrument to appellant on April 6, 1964. The mortgage was filed for record on April 9, 1964, nine days after appellee bank had filed the mortgage of record in the same county.

Upon default of the note to appellee bank Bontke relinquished possession of the tractor to the bank, which sold it. Appellant (the assignee of the chattel mortgage acquired from Bontke by the dealer on April 3, 1964) later filed suit against the bank for conversion. We affirm the trial court.

Appellant's first point asserts the trial court erred in granting the judgment for the bank because it had a superior purchase money mortgage. Under this point we believe the principal question to be decided is whether title passed to Bontke upon delivery of the tractor after the contract had been made to purchase it and a $500.00 down payment had been made.

■■■ "A contract is a compact between two or more parties, and is either executory or executed. An executory contract is one in which a party binds himself to do, or not to do, a particular thing. * * A contract executed is one in which the object of the contract is performed." Fletcher v. Peck, Mass., 10 U.S. 87, 6 Cranch 87, 3 L.Ed. 162, 178. See also The Trustees of Dartmouth College v. Woodward, 17 U.S. 518, 4 Wheaton 518, 4 L.Ed. 629, 655.

When the tractor was ordered from the manufacturer by the dealer and a $500.00 down payment made by Bontke he bound himself to accept delivery of the Allis-Chalmers D–19 L.B. Tractor. Until the tractor was set aside or marked or designated specifically for Bontke, the contract was still executory. Tufts v. Lawrence, 77 Tex. 526, 14 S.W. 165 (1890). It follows that when the tractor was set aside or marked or designated specifically for Bontke the contract was an executed one and title passed upon delivery.

One of our intermediate appellate courts in Texas has held a contract to purchase a buggy was executed and title passed upon the seller's approval of the purchaser's order of the vehicle of specified character and stipulated price and its shipment to the purchaser thereof. Embree-McLean Carriage Co. v. Lusk, 11 Tex.Civ.App. 493, 33 S.W. 154 (First District, 1895). The executory contract provided it was to be delivered "free on board cars". The court held the buggy was delivered when it was placed on board cars, and that title passed at that time even though payment or method of payment had not been agreed upon. Also the vehicle was not in physical possession of the purchaser as here. See also Manning Rubber Co. v. Blackstone Drug Co., 115 S.W.2d 1137 (Tex. Civ.App.–Amarillo, 1938, n. w. h.); Lewis v. Pittman, 191 S.W.2d 691 (Tex.Civ. App.–Eastland, 1945, n. w. h.); Central Sales Co. v. Everybody's Garage, 229 S.W. 880 (Tex.Civ.App.–Austin, 1921, n. w. h.); Barreda v. Craig et al., 222 S.W. 177 (Tex. Com.App.–Sec. B, 1920, judgment approved); Nicewarner v. Alston, 228 S.W. 2d 872 (Tex.Civ.App.–Amarillo, 1950, writ ref'd, n. r. e.).

■■■ Under the record here, there was not any valid chattel mortgage (actual or constructive) on the tractor as notice to the bank when it loaned Bontke the money and secured the note by a chattel mortgage on the tractor. Therefore, title was in Bontke free and clear of any purchase money mortgage of which the bank had

notice at the time it took its lien. Arts. 5489 and 5490, Vernon's Ann.Tex.Civ.St. There being no valid mortgage giving actual or constructive notice to the bank of any lien against the chattel when the bank took its mortgage, it was the first lienholder and had the legal right to sell the property voluntarily released to it by Bontke to satisfy its delinquent note the tractor secured.

■ Conversion has been defined by our courts[1] as "the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the exercise of the same rights by the owner". Where this rule is applied to the facts and rules of law above stated it is obvious that appellee bank could not have been guilty of conversion in selling a chattel upon which it owned equitable title constituting a lien prior in time to any other, and which chattel had been voluntarily released to it by the legal owner of the title thereto.

The only other point urged by appellant is that appellee's chattel mortgage was invalid because of inadequate description. This is a question raised for the first time on appeal. No summary judgment component raised it, either by pleadings or otherwise.

■ If the chattel mortgage lien of appellee was invalid because of lack of description of the chattel it is academic that such defense constituted a bar to the bank's priority. The trial court had no opportunity to pass on that question because it was not raised in that court. "A reviewing court ordinarily will decline to consider questions not raised in the trial court." 4 T.J.2d Appeal & Error, Sec. 746, P. 243, and cases there cited. This case constitutes no exception to the general rule.

The judgment of the trial court is affirmed.

1. Cantrell v. Broadnax, 306 S.W.2d 429 (Tex.Civ.App.–Dallas, 1957, n. w. h.); Sunray Enterprises, Inc. v. Rosenaur, 335

S.W.2d 670 (Tex.Civ.App.–Dallas, 1960, writ ref'd, n. r. e.).