

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00370-CV

ASTON MEADOWS, LTD., MONTCLAIRE CUSTOM HOMES, L.P., PETER PAULSEN, STEVE PAULSEN, MIKE WELLS, KATHRYN LEBLANC, DONALD LEBLANC, NATALIE J. WARNICK, JAMES S. WARNICK, AND KATHY IVEY
                                                                    APPELLANTS

V.

DEVON ENERGY PRODUCTION COMPANY, L.P. AND DEVON ENERGY CORPORATION
                                                                    APPELLEES

----------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Aston Meadows, Ltd., Montclaire Custom Homes, L.P., Peter Paulsen, Steve Paulsen, Mike Wells, Kathryn LeBlanc, Donald LeBlanc, Natalie J. Warnick, James S. Warnick, and Kathy Ivey (collectively, appellants) appeal from a summary judgment in favor of appellees Devon Energy Production Company,

L.P. and Devon Energy Corporation. Appellants bring seven issues challenging the propriety of the summary judgment for appellees and the trial court's denial of Aston Meadows's and Ivey's cross-motions for summary judgment. Appellants also bring two issues challenging the trial court's evidentiary rulings as to Ivey's summary judgment evidence. Appellees bring a conditional cross-issue challenging the trial court's refusal to award them attorney's fees. We affirm.

**Background**

Aston Meadows purchased 182.024 acres (the Property) in northern Tarrant County in March 2001 to be used as a residential development; it subdivided the property and recorded a plat.[1] Aston Meadows also obtained a title policy in connection with the purchase. Unbeknownst to all of the appellants, the entire Property, which had been part of a larger tract located in both Tarrant and Wise Counties, was subject to a 1977 oil, gas, and mineral lease (the Lease) that encumbered several hundred acres of the larger tract in both Tarrant and Wise Counties. The Lease was recorded in Wise County only in 1977. The Lease was not shown as an encumbrance on Aston Meadows's title policy, and it was not recorded in Tarrant County until April 2002, after Aston Meadows purchased the Property.

---

[1]Both Peter and Steve Paulsen and Wells have interests in Aston Meadows. Montclaire, the LeBlancs, the Warnicks, and Ivey all purchased lots in the subdivision from Aston Meadows.

Devon Energy Production Company, L.P. is the successor to the original lessee under the Lease. When Aston Meadows purchased the Property, there were no signs of any oil or gas production. However, in June 2007, appellants sued Devon and its parent company, Devon Energy Corporation, alleging that appellees had impermissibly drilled horizontally under the Property. Appellants sought a declaration that the Lease was invalid because it was not recorded in Tarrant County when Aston Meadows purchased the Property and, therefore, appellants were bona fide purchasers for value. They also sought damages for conversion and trespass, as well as injunctive relief. In the alternative, they brought a claim for breach of contract under the Lease, claiming as damages royalties under the Lease that they had not yet been paid.[2]

Appellees filed a motion for summary judgment contending that appellants had constructive notice of the Lease because it was properly recorded in Wise County under section 11.001(a) of the property code. Aston Meadows and Ivey filed cross-motions for summary judgment contending, among other things, that they are bona fide purchasers for value because section 11.001(a) does not control here; thus, they did not have constructive notice of the Lease. They also claimed in the alternative that they did not have inquiry notice of the Lease. In several orders, the trial court granted appellees' motion for summary judgment,

_____

[2]During this suit, the parties entered into a settlement agreement regarding the payment of past due royalties.

denied Aston Meadows's and Ivey's, and rendered a final judgment dismissing all of appellants' claims against appellees.

## Analysis

In their first seven issues, appellants challenge the trial court's rulings on the competing summary judgment motions; their issues all relate to the trial court's resolution of the question of law regarding whether appellants had notice of the Lease.

### Applicable Law

Notice sufficient to defeat bona fide purchaser status may be actual or constructive. *Noble Mortg. & Invs., LLC v. D & M Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Actual notice rests on personal information or knowledge. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001); *Noble Mortg.*, 340 S.W.3d at 76. Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison*, 39 S.W.3d at 606; *Noble Mortg.*, 340 S.W.3d at 76. Constructive notice creates an irrebuttable presumption of actual notice in some circumstances. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998); *Noble Mortg.*, 340 S.W.3d at 76.

The Texas Property Code provides that an "instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument." Tex. Prop. Code Ann. § 13.002 (West 2004). Recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007); *Noble*

4

*Mortg.*, 340 S.W.3d at 76; *see also HECI Exploration Co.*, 982 S.W.2d at 887 ("The need for stability and certainty regarding titles to real property has led courts to hold that real property records can constitute constructive notice."); *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) ("It is well settled that 'a purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims.'"). A person may also be charged with constructive notice for a deed outside his chain of title if facts appearing in the chain of title through which he claims would place a reasonably prudent person on inquiry as to the rights of other parties in the property conveyed. *Noble Mortg.*, 340 S.W.3d at 76; *Nguyen v. Chapa*, 305 S.W.3d 316, 324–25 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Property code section 11.001(a) provides that "[t]o be effectively recorded, an instrument relating to real property must be eligible for recording and must be recorded in the county in which a part of the property is located." Tex. Prop. Code Ann. § 11.001(a) (West Supp. 2011). Section 11.001 was enacted in 1983 as a nonsubstantive recodification of the property-related revised civil statutes. *See* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, sec. 1.001(a), 1983 Tex. Gen. Laws 3475, 3478. The substance of the predecessor to section 11.001 was initially enacted in 1887,[3] has not significantly changed since then, and has been

---

[3]Act approved April 1, 1887, 20th Leg., R.S., ch. 102, § 1, 1887 Tex. Gen. Laws 892, 892.

5

consistently construed by appellate courts to provide that if a single tract of land spans multiple counties, recording in either of the counties in which part of the tract is located is sufficient to provide constructive notice. *See, e.g., Brown v. Lazarus*, 25 S.W. 71, 73 (Tex. Civ. App. 1893)[4] ("Article 4333, Rev. St., provides that 'all deeds, conveyances, mortgages, deeds of trust, or other written contracts relating to real estate, which are authorized to be recorded, shall be recorded in the county where such real estate, or a part thereof, is situated.'").[5]

In *Brown v. Lazarus*, the Court of Civil Appeals held,

---

[4]According to *Texas Jurisprudence*, when "a deed or other instrument affects the title to land in one tract that is partly in one county and partly in another, recordation in either county is notice as to all the land." 64 Tex. Jur. 3d *Records and Recording Laws* § 42 (2003); *see* Steven C. Haley, *The Recording Statute in Texas (and the Innocent Purchaser Doctrine)*, State Bar of Tex. Prof. Dev. Program, Advanced Real Estate Law Course (2007) ("If one property is located in two different counties, recordation in one of those two counties is sufficient, even if only an insignificant part of the land lies in the county of recordation." (footnotes omitted)), *available at* http://www.moormantate.com/stevenPub%20PDF/The%20Recording%20Statute %20(00037193).PDF. Both of these sources cite cases dating to the 1880s in support of this proposition. *See, e.g.*, *Hancock v. Tram Lumber Co.*, 65 Tex. 225, 232 (1885); *Tom v. Kenedy Nat'l Farm Loan Ass'n*, 123 S.W.2d 416, 419 (Tex. Civ. App.—El Paso 1938, no writ); *Haines v. West*, 102 S.W. 436, 439 (Tex. Civ. App.), *aff'd*, 105 S.W. 1118 (1907).

[5]Appellants contend that because the statute says that a deed should be recorded in "the county in which a part of the property is located" rather than "a county" or "any county," the statute should be construed to particularize the word "county" so that an instrument must be recorded in *each* county in which a part of the property is located. However, their argument is self-defeating; if "the" particularizes the word "county," then recording in only one county rather than multiple counties is what is contemplated by the statute. *See Steger & Bizzell, Inc. v. Vandewater Constr., Inc.*, 811 S.W.2d 687, 693 (Tex. App.—Austin 1991, writ denied) ("Next, the term 'the' preceding the term 'transaction' indicates that the statute is referring to the solicitation of one particular transaction.").

From so much of the judgment as denied appellees Lazarus and the Western Mortgage & Investment Company, Limited, a recovery against the other appellees of that part of the tract of 3,111 acres which is situated in Wichita [C]ounty, they have prosecuted a cross appeal. They claim as purchasers under a deed of trust which was duly recorded in Archer [C]ounty, where about one-half of said tract of land is situated. The other appellees claim as purchasers at execution sale made in Wichita [C]ounty by virtue of a levy subsequent to the registration of the deed of trust in Archer [C]ounty, of which deed of trust the plaintiff in execution had no actual notice at the date of the levy. The entire tract of land was described in the patent, and in the subsequent conveyances, including the deed of trust, as situated in Archer [C]ounty, but with the field notes therein set out. Article 4333, Rev. St., provides that 'all deeds, conveyances, mortgages, deeds of trust, or other written contracts relating to real estate, which are authorized to be recorded, shall be recorded in the county where such real estate, or a part thereof, is situated.' The succeeding article provides that 'every conveyance, covenant, agreement, deed of trust, or mortgage in this chapter mentioned, which shall be acknowledged, proved or certified according to law, and delivered to the clerk of the proper court to be recorded, shall take effect and be valid as to all subsequent purchasers for a valuable consideration, without notice, and as to all creditors, from the time when such instrument shall be so acknowledged, proved, or certified and delivered to such clerk to be recorded, and from that time only.' The language of these articles indicates very clearly, we think, that when the holder of the deed of trust had it recorded in Archer [C]ounty, where all the land purported to be situated, and where 'a part' (one-half) of the entire tract was situated, the statute was fully complied with, and the lien thereby secured must be protected against 'all creditors,' as therein provided. *The tract being a unit, record in either county would be sufficient constructive notice*. The language employed by the present chief justice of our supreme court in *Hancock v. Lumber Co.*, 65 Tex. 232, in construing this statute, while not necessary to a decision of that case, seems to us to state the rule correctly. It follows, therefore, that as to so much of this tract as lies in Wichita [C]ounty[,] the judgment must be reversed, and here rendered in accordance with this conclusion, for the entire tract, in favor of said appellees, who recovered only that part which is situated in Archer [C]ounty.

25 S.W. at 73 (emphasis added).

7

Appellants contend that *Brown* is distinguishable because (1) the predecessor statute which it references involved "specific creditor language," which current section 11.001(a) does not contain, (2) it dealt with the recording of a deed of trust rather than an oil and gas lease, (3) the deeds at issue in *Brown* described the land as being located only in the county in which the deed of trust was recorded even though the metes and bounds description indicated the land was actually located in two counties, and (4) the purchaser in *Brown* obtained property known to be located in two counties.

The "specific creditor" language in the prior statute does not distinguish the statute at issue in *Brown* from the language in section 11.001(a); *Brown*'s construction of the applicable part of the prior statute does not turn on the "specific creditor" language. Instead, that language reiterates as against whom and when a properly recorded deed gives constructive notice. *Id*. Additionally, that *Brown* involved a deed of trust rather than an oil and gas lease is of no import: both section 11.001(a) and its predecessor apply to instruments or contracts related to real estate; an oil and gas lease, like a deed of trust, is clearly an instrument related to real property. *See Tittizer v. Union Gas Corp*., 171 S.W.3d 857, 860 (Tex. 2005) ("An oil and gas lease is a contract, and its terms are interpreted as such.").

Although the deed of trust at issue in *Brown* did describe the land as being located in Archer County (even though part of it was also located in Wichita County according to the metes and bounds description), the court's opinion did

8

not turn on that description but rather on compliance with the statute, by virtue of the fact that part of the land was actually located in Archer County. *See Brown*, 25 S.W. at 73. Additionally, the deed to Aston Meadows, although describing property as being located in Tarrant County, also describes it as "a portion of that certain tract of land described in deed to the The Jack W. Wilson Family Trust, recorded in Volume 11964, page 683, Deed Records, Tarrant County, Texas." The deed to the Jack W. Wilson Family Trust describes the property being conveyed as located in "Tarrant County and Wise County." *See* Tex. Prop. Code Ann. § 11.007 (West 2004) ("A reference in an instrument to the volume and page number, film code number, or county clerk file number of the 'real property records' (or other words of similar import) for a particular county is equivalent to a reference to the deed records, deed of trust records, or other specific records, for the purpose of providing effective notice to all persons of the existence of the referenced instrument.").[6]

Finally, it is unclear whether the parties who recovered the Wichita County part of the tract in *Brown* were claiming title to the entire tract, including the part in Archer County, or only the part in Wichita County. The appellate court does

---

[6]Although the references in the deed to Aston Meadows relate more properly to the issue of inquiry notice, we discuss them here to show that the court's decision, and interpretation of the statute, in *Brown* was based on the property's actual location rather than its description in the deed. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982); *Boswell v. Farm & Home Sav. Ass'n*, 894 S.W.2d 761, 766 (Tex. App.—Fort Worth 1994, writ denied).

9

not say if those parties had claimed the entire tract at trial although we note that the trial court had already awarded the Archer County part to Lazarus, so the only part of the tract at issue on appeal was the part in Wichita County. *Brown*, 25 S.W. at 73. Thus, *Brown* is not distinguishable on that basis.

We conclude and hold that the correct statutory construction of section 11.001(a) is that when an instrument relates to a contiguous tract of land located in more than one county, the recording of that instrument in only one of the counties is sufficient to comply with the requirements of section 11.001(a).

**Effect of Subdivision of Larger Tract on Recording Requirements**

Appellants contend that this construction of section 11.001 improperly places the burden on a purchaser of property that has been subdivided from a larger, multi-county tract into a single county tract to search the property records of multiple counties for prior recorded instruments. Appellants contend that even if the Lease was properly recorded initially, it is not effective as to appellants because the character of the Property changed once it was "no longer being treated as a single tract or unit."

According to appellants, a purchaser should be required to search property records only in the county in which the purchased property is located. However, such a rule would place the burden on a recorder of a prior instrument conveying an interest in real property (such as a deed of trust or oil and gas lease) to continually check property records for evidence of subsequent subdivision by the owner and of recordings by subsequent purchasers. This would turn our

10

recording system, which provides for a system of constructive notice to subsequent purchasers of prior recorded documents, on its head.

As pointed out by appellees, a prospective purchaser can protect its rights by "examining the chain of title to the property to be acquired and searching the real property records of *all counties referenced in the chain of title*." [Emphasis added.] Such a burden does not seem to be as onerous in a case, such as this one, in which title insurance was obtained; the title company's abstract plant maintains records based on past chains of title rather than being searchable for prospective purchasers. *See* Tex. Ins. Code Ann. § 2501.004 (West Supp. 2011); *Noble Mortg.*, 340 S.W.3d at 79–80; *Sanchez v. Telles*, 960 S.W.2d 762, 767 (Tex. App.—El Paso 1997, pet. denied) ("The intention of the recording acts is to compel every person receiving conveyances of real property to place such an instrument of record, not only that he may thereby protect his own rights, but also those of all others who may *afterwards* seek to acquire an interest in the same property." (emphasis added)). Moreover, by enacting section 11.001(a), it is the legislature that has chosen to place the burden on subsequent purchasers of subdivided property to check all applicable property records rather than on prior recorders of instruments to continually check for subsequent recorded documents.

Appellants contend that this interpretation of section 11.001(a) conflicts with sections 11.001(b) and 12.005 of the property code. Section 11.001(b) provides that if an instrument is recorded in a proper county, and a new county is

later formed "containing property conveyed or encumbered by the instrument," the creation of the new county "does not affect the recording's validity or effect as notice." Tex. Prop. Code Ann. § 11.001(b) (West Supp. 2011). The county court of the new county must, at its own expense, "obtain a certified transcript of the record of all instruments conveying or encumbering property in the new county[,] . . . deposit the transcript for public inspection in the recorder's office of the new county[,] and . . . make an index of the transcript." *Id*. However, this part of the statute does not make the validity of the instrument dependent on the new county's recording of the instrument in that county's records; instead, it very clearly states that the formation of the new county does *not* affect the validity of the prior recorded instrument as to notice. Thus, our interpretation of section 11.001(a) does not conflict with section 11.001(b).

Moreover, our interpretation of the statute does not conflict with section 12.005 either, which provides that "[a] court order partitioning or allowing recovery of title to land must be recorded with the county clerk of the county in which the land is located in order to be admitted as evidence to support a right claimed under the order." *Id*. § 12.005(a) (West 2004). This provision is intended to provide for a court order, which is not normally required to be recorded in a county's real property records, to serve as constructive notice; it is inapposite to the proper construction of section 11.001(a).

**Where is Property Located?**

Appellants contend that even if this court interprets section 11.001(a) as giving constructive notice if the instrument is recorded in only one county, appellees did not conclusively establish recording in the proper county because the premises originally leased to appellees' predecessor consisted of three separate and distinct tracts, rather than just the two purportedly described in the Lease, and that the third tract was located completely in Tarrant County and therefore is not part of a larger tract spanning multiple counties.

A visual depiction of the two tracts described in the Lease is attached to this opinion as an addendum. The first tract is located in both Wise and Tarrant Counties and is shown in yellow. The second tract is described by metes and bounds and consists of two almost squares meeting at a point in the middle (similar to a figure eight with squared figures instead of loops); it is shown in green. The western part of the second tract is located in both Wise and Tarrant Counties, but the eastern part is located solely within Tarrant County. Most of the Property is comprised of the eastern part of Tract II. According to appellants, because the eastern part of Tract II is located solely within Tarrant County, section 11.001(a) does not apply, and the law requires the Lease to be recorded in both counties because the eastern part is a separate and distinct tract of land. *See Hancock*, 65 Tex. at 232 ("We do not think, however, that the registration of a deed, or other instrument which affects the title to several separate or distinct tracts of land situated in different counties, in a county in which some of the tracts

13

may be situated, would be such registration as would operate as notice of the deed or other instrument, in so far as the same might embrace lands not situated in the county in which registration is made.").

Here, a careful reading of the entirety of the Lease[7] shows that the grantors were not intending to convey separate lease rights in distinct tracts of land, but rather the same interest in an entire tract that was described in two parts. The Lease begins by stating that the lessor "grants, leases and lets exclusively . . . the following described land," after which is a description of the two tracts. After the descriptions of the two tracts, which are titled "Tract I" and "Tract II" and comprise two paragraphs, is the following: "LESS AND EXCEPT *from the above two tracts* . . . 526.52 acres of land located in the M. Ashton Survey, Abstract 1 and Chas. Fleishner Survey, Abstract 310 . . . ." [Emphasis added.] Following the property descriptions is this statement: "This lease also covers and includes all land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not included within the boundaries of the land particularly described above." Thus, we conclude and hold that the Lease did not intend to apply to two or three separate tracts in different counties,

---

[7]We review an unambiguous lease de novo as a question of law; our primary duty is to ascertain the parties' intent as expressed within the lease's four corners, harmonizing all of its parts. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002).

14

but rather to one contiguous tract described in two parts. Therefore, section 11.001(a) applies.

**Conclusion**

Based on the foregoing, we conclude and hold that the trial court did not err by granting summary judgment for appellees. Because Aston Meadows's and Ivey's motions for summary judgment were based on the interpretation of the statute that we reject here, we also conclude and hold that the trial court did not err by denying those motions for summary judgment. We overrule appellant's first through seventh issues.[8]

**Evidentiary Issues**

In their eighth and ninth issues, appellants contend that the trial court abused its discretion by (1) excluding an affidavit with attached exhibits from Gregory S. Iffland in response to Ivey's motion for summary judgment on the ground that Iffland had not been disclosed as a witness and (2) excluding parts of Ivey's affidavit. However, even if the trial court did abuse its discretion by excluding that evidence, the exclusion did not cause the rendition of an improper verdict because that evidence would not change the trial court's answer to the

---

[8]To the extent those issues raise inquiry notice, we do not address them. *See* Tex. R. App. P. 47.1.

15

question of law resolved in the summary judgment for appellees.[9]  *See* Tex. R. App. P. 44.1(a)(1).  Accordingly, we overrule appellants' eighth and ninth issues.

## Conclusion

Having overruled appellants' nine issues, we affirm the trial court's judgment.  Because appellees' cross-issue is contingent on this court's granting relief to appellants, we need not address it.  *See* Tex. R. App. P. 47.1.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  January 26, 2012

---

[9]Although the trial court excluded the evidence as to Ivey's response to appellees' motion for summary judgment, it did not do so as to Ivey's motion for summary judgment, or the prior cross-motions for summary judgment filed between Aston Meadows and appellees.



Addendum