

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00027-CV

_____

TRINITY FINANCIAL SERVICES, LLC, Appellant

V.

JASON MAHANAY AND AMBER MAHANAY, Appellees

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-313075-19

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

The trial court rendered a declaratory judgment that Appellees Jason and Amber Mahanay were bona fide purchasers for value. The court found, among other things, that the Mahanays had no notice of the lien that Appellant Trinity Financial Services, LLC now asserts against their property.

On appeal, Trinity argues, quite correctly, that real property records bestowed the Mahanays with constructive notice of the lien. This presumption of constructive notice is irrebuttable, and it defeats the Mahanays' bona fide purchaser defense as a matter of law. We therefore reverse and remand.

## I.    BACKGROUND

In 2006, Teena and Martin Lopez hired a contractor to build a swimming pool at their property in Tarrant County. To finance the project, the Lopezes took a loan from Certified Funding, LP. Along with a note, the Lopezes signed a deed of trust (the lien).

In the next two years, the note and lien were assigned twice. In 2006, Certified Funding transferred the note and lien to Credit Union of Texas (CUTX), whereupon they were recorded. In December 2008, CUTX assigned the note and lien to Companion Property and Casualty Insurance, which recorded them.

Teena and Martin later divorced, and Martin transferred his interest in the property to Teena in 2009. There was some evidence that Teena submitted payment

for the note to CUTX in 2009, even though the note and lien had been assigned from CUTX to Companion in 2008.

In August 2014, the Mahanays bought the property from Teena. The central question in this appeal is whether, at the time of purchase, the Mahanays had actual or constructive notice that the property was encumbered by the lien. The record contains four types of evidence with bearing on that question.

First, during closing in 2014, the Mahanays obtained a title commitment from their title agent. The title commitment specifically mentioned that the property was encumbered by a lien held by Companion.

Second, there was a recorded assignment of the note and lien from CUTX to Companion in late 2008. When the Mahanays bought the property, the Tarrant County real property records thus reflected that Companion was the holder of an outstanding note and lien.

Third, there were a set of representations that Teena made to the Mahanays' title agent at the time of purchase. Teena told the Mahanays' title agent that the note and lien had been paid off in 2009 and there were no outstanding liens against the property. She provided the Mahanays' title agent with contact information for CUTX and encouraged the Mahanays to verify the status of the note and lien.

Fourth, when the Mahanays' title agent reached out to verify Teena's statements, CUTX confirmed that Teena had paid the full amount of the note in 2009 and that CUTX should have recorded a release of the lien at that time. So, on July 30, 2014,

3

CUTX filed a release of lien, even though it had not held any interest in the note or lien since 2008.

In 2019, Trinity attempted to foreclose on the property, though it was disputed how Trinity came into possession of the note and lien. The Mahanays responded by filing this suit for declaratory judgment, quiet title, and temporary and permanent injunctions. The Mahanays sued various parties, but by the time of trial, Trinity was the only defendant.

After a bench trial, the trial court granted a declaratory judgment that the Mahanays were bona fide purchasers and it awarded them $26,000 in attorney's fees. The judgment declared that the Mahanays purchased the property in good faith, for value, without actual or constructive notice of any third-party claim or interest, and they thus took the property free and clear of Trinity's claims. Trinity appeals.

## II. STANDING

Because it relates to jurisdiction, we begin with the Mahanays' argument that Trinity lacked standing. The Mahanays submit that in order to establish standing, Trinity must be able to trace its ownership of the note and lien back to the original mortgagee, Certified Funding. According to the Mahanays, Trinity offered no evidence to prove ownership, and it therefore lacks standing.

We agree that the trail of ownership grew murky after Companion obtained the note in 2008. There was no clear evidence to explain how, specifically, Trinity came

4

into possession of the note and lien, and its ownership was hotly disputed in the trial court.[1]

But despite the ownership issues, there are multiple defects in the Mahanays' argument concerning standing that preclude its success. First, it is not clear whether the Mahanays are challenging Trinity's standing in the trial court or its standing to appeal. Their ambiguous argument includes concepts that would comport with either a challenge to trial-court standing or to appellate standing.

Second, if the Mahanays' argument is that Trinity failed to demonstrate trial-court standing, then the Mahanays—the plaintiffs who initiated this suit against Trinity—are attempting to shift their burden to demonstrate standing onto a defendant. Standing is a component of subject matter jurisdiction, *Meyers v. JDC/Firethorne, Ltd.*,

---

[1]At trial, Trinity maintained that it was the owner and holder of the note by virtue of two documents, but those documents left questions unanswered. The first was an undated allonge to the note that Companion executed with a blank space following the words "Pay to the order of," making it payable to the bearer. The second was an instrument that purported to assign the note from Companion to Trinity, which reflects that it was signed in 2011 but that, for some reason, was first erroneously recorded in Dallas County in 2015 and then was apparently re-recorded in the correct county, Tarrant County, in 2016. However, it was undisputed that Trinity could not produce the original note itself or any payment history on the note, and there was little evidence to explain how Trinity acquired the note from Companion. Furthermore, other evidence cast doubt on Trinity's claim that it acquired the note and lien directly from Companion. The Mahanays pointed to an affidavit of lost note executed in September 2012 by Dreambuilder Investments, LLC—an apparent stranger to the chain of title— in which Dreambuilder claimed to be the then-owner of the note and lien, both of which it declared were lost. If Dreambuilder's affidavit were true, then Trinity's claim that it acquired the note and lien from Companion in 2011 could not also be true. Trinity was unable to produce any evidence to clarify this morass.

548 S.W.3d 477, 484 (Tex. 2018), and it is the plaintiffs' burden to affirmatively demonstrate the trial court's jurisdiction, *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). The elements of the standing inquiry relate to whether "the plaintiff has personally been injured," whether "the plaintiff's alleged injury [is] fairly traceable to the defendant's conduct," and whether the plaintiff has shown "a substantial likelihood that the requested relief will remedy the alleged injury." *Watson v. City of Southlake*, 594 S.W.3d 506, 514 (Tex. App.—Fort Worth 2019, pet. denied) (cleaned up). Thus, in *Lewis v. Aurora Loan Services*, the court declined a plaintiff's invitation to consider whether the defendants had standing to foreclose in light of gaps in the defendant's chain of ownership of the mortgage documents. No. 01-15-00362-CV, 2016 WL 887176, at *3 (Tex. App.—Houston [1st Dist.] Mar. 8, 2016, no pet.) (mem. op.). "The defendants are not the plaintiffs in this case. Lewis is. Thus, the issue is not whether defendants have standing to maintain this action." *Id.* It was the Mahanays who alleged that they suffered an injury traceable to Trinity's conduct. Trinity, as the party pulled into court, had no burden to demonstrate trial-court standing; the relevant inquiry is standing to sue, not standing to be sued.

Third, if the Mahanays are instead referring to standing to appeal, their argument is equally unavailing. A named party to the suit may bring an appeal. *Kenneth D. Eichner, P.C. v. Dominguez*, 623 S.W.3d 358, 362 (Tex. 2021). "[A] party whose own interest is prejudiced by an error has standing to appeal." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Trinity is a party to the final judgment and complains on appeal

6

of errors that injuriously affected its claimed interest in the property, and it therefore has standing to appeal. *See Suite 900, LLC v. Vega*, No. 02-19-00271-CV, 2020 WL 2608394, at *7 (Tex. App.—Fort Worth May 21, 2020, pet. denied) (mem. op.).

We reject the Mahanays' argument concerning standing.

## III.   BONA FIDE PURCHASER

In its first issue, Trinity asserts that the Mahanays were not bona fide purchasers because the Mahanays had constructive knowledge of the lien.  Trinity cites the recorded assignment from CUTX to Companion from 2008, which, if diligently inspected in its proper context at the time of the Mahanays' purchase in 2014, would have informed them that there was an outstanding lien held by Companion.  According to Trinity, this recorded assignment imparted the Mahanays with constructive knowledge of the lien, which conclusively defeats their bona fide purchaser defense.

## A.    Standard of Review

We review declaratory judgments under the same standards as other judgments and decrees and look to the procedure used to resolve the issue in the trial court to determine the appropriate standard of review. *City of Forest Hill v. Benson*, 555 S.W.3d 284, 288 (Tex. App.—Fort Worth 2018, no pet.).  The procedure used in this case was a bench trial.  When a declaratory judgment is rendered after a bench trial, we review the trial court's conclusions of law de novo. *Id.*  We review a trial court's findings of fact under the same legal and factual sufficiency standards that we use for jury questions. *Walterscheid v. Walterscheid*, 557 S.W.3d 245, 257 (Tex. App.—Fort Worth 2018, no pet.).

7

We may sustain a legal-sufficiency challenge only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields LP v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

## B. Constructive Notice

Under Texas law, an unrecorded deed of trust is void as to a subsequent purchaser who purchases the property for valuable consideration without notice. Tex. Prop. Code Ann. § 13.001(a); *Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 26 (Tex. 2021). A person who acquires property in good faith, for value, and without notice of any third-party claim or interest is a bona fide purchaser. *Broadway Nat'l Bank*, 631 S.W.3d at 26. A bona fide purchaser acquires a property interest without being subject to prior claims. *Orca Assets, G.P., L.L.C. v. Dorfman*, 470 S.W.3d 153, 164 (Tex. App.—Fort Worth 2015, pets. denied). The party claiming bona fide purchaser status has the burden to prove the defense. *Bellaire*

8

*Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 209 (Tex. App.—Fort Worth 1992, writ denied).

There is no dispute concerning the Mahanays' purchase of the property in good faith and for value. The question is whether the Mahanays had notice of the lien.

Notice may be constructive or actual. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). Actual notice rests on personal information or knowledge. *Id.* Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Id.* "Constructive notice creates an irrebuttable presumption of actual notice in some circumstances." *Aston Meadows, Ltd. v. Devon Energy Prod. Co., L.P.*, 359 S.W.3d 856, 859 (Tex. App.—Fort Worth 2012, pet. denied) (citing, *inter alia*, *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998)). "[W]hereas actual notice is usually a question of fact for the jury, constructive notice is a legal presumption not to be controverted." *Bank of Am. v. Babu*, 340 S.W.3d 917, 923 (Tex. App.—Dallas 2011, pet. denied) (quoting *Univ. State Bank v. Gifford-Hill Concrete Corp.*, 431 S.W.2d 561, 571 (Tex. App.—Fort Worth 1968, writ ref'd n.r.e.)).

An "instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument." *Aston Meadows*, 359 S.W.3d at 859 (quoting Tex. Prop. Code Ann. § 13.002). "While not all public records establish an irrebuttable presumption of notice, the recorded instruments in a grantee's chain of title generally do." *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007). "Chain of title refers to the documents which show the successive ownership history of the land, and

9

includes the successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder." *Hahn v. Love*, 394 S.W.3d 14, 28 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (cleaned up). "It is well settled that a purchaser is bound by *every* recital, reference[,] and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) (cleaned up). Any description, recital of fact, or reference to other documents in an instrument puts the purchaser on inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained. *Id.*; *Disanti v. Wachovia Bank, NA*, No. 2-08-330-CV, 2009 WL 1372970, at *3 (Tex. App.—Fort Worth May 14, 2009, no pet.) (mem. op.).

One could fairly argue that the Mahanays should be excused from constructive knowledge of the lien because they inquired into the lien but were twice misled, by Teena and CUTX, as to the status of the lien. In 2014, Teena told the Mahanays' title agent that she paid CUTX the full amount of the note in 2009, and also in 2014, CUTX wrongly confirmed that the note had been validly paid off and the lien should have been released as a result. CUTX then executed an ineffectual written release of lien. One could argue that there should be some exception to constructive notice when, as here,

10

a former property owner and a former lien holder have both misled the purchasers of the property as to the lien's status.

Legally, though, we find no room for such an exception in this case. The Mahanays were indeed misled, which would affect the Mahanays' actual knowledge. However, constructive notice is ascribed to a person "irrespective of any actual knowledge." *City of Richland Hills v. Bertelsen*, 724 S.W.2d 428, 430 (Tex. App.—Fort Worth 1987, no writ). A purchaser is bound to search the official county records since they constitute the primary source of information as to title, and that person is charged with knowledge of the existence and contents of recorded instruments that affect the title to the property. *Swanson v. Grassedonio*, 647 S.W.2d 716, 718 (Tex. App.—Corpus Christi–Edinburg 1982, no writ). At the time of the Mahanays' purchase, the county records would have reflected (1) that CUTX had sold its interest in the note and lien to Companion in 2008, (2) that Companion had held an outstanding note and lien since that time, and (3) that CUTX had nonetheless attempted to execute a release of lien in 2014, after it had already parted ways with the instruments. Nothing in the county records would have suggested that CUTX had the authority to release the lien in this fashion. But instead of diligently searching the county records, the Mahanays and those in their camp instead elected to rely on representations by a former property owner (Teena) and a former noteholder (CUTX), as well as a release from the latter. The Mahanays did so at their own hazard, and they may not rely on the faults in their own

11

inquiry as a boon for purposes of the bona fide purchaser defense.[2]  *See Watson v. Druid Hills Co.*, 355 S.W.2d 65, 70 (Tex. App.—Dallas 1962, writ ref'd n.r.e.).

Texas Supreme Court precedent shows that despite Teena's and CUTX's false representations that the lien had been properly paid off, the Mahanays nonetheless should be held to their constructive notice of the lien's continuing validity and enforceability.  *See Ford*, 235 S.W.3d at 616.  In *Ford*, a plaintiff sued for real estate fraud alleging that he signed an amendment to an easement only because the defendant "falsely represented that the original easement covered . . . three tracts, when in fact it covered only one."  *Id.*  On appeal, the court rejected the plaintiff's contention that the statute of limitations should be tolled because he lacked notice of the problem with the easement.  *Id.* at 617.  The court held that despite the misrepresentations, the plaintiff was nonetheless charged with irrebuttable constructive notice of the truth contained in the real property records.  *Id.*  This constructive notice of the defect in the amendment triggered the immediate running of limitations.  *See id.*

---

[2]We allow for the possibility that the situation might be different if the Mahanays had instead been misled as to the status of the lien by a party who was then currently the holder of the note and lien.  *See Tex. Consol. Oils v. Bartels*, 270 S.W.2d 708, 712 (Tex. App.—Eastland 1954, writ ref'd) (suggesting that estoppel might come into play in such a circumstance); *Garrett v. Katz*, 23 S.W.2d 436, 438 (Tex. App.—Dallas 1929, writ ref'd), *corrected*, 27 S.W.2d 373 (Tex. App.—Dallas 1930, no writ); *see also Pustejovsky v. K. J. Z. T. Lodge*, 79 S.W.2d 1084, 1085 (Tex. 1935); *cf. Ellis v. Waldrop*, 627 S.W.2d 791, 798 (Tex. App.—Fort Worth 1982) ("When investigation produces facts sufficient to satisfy a prudent inquirer that a recorded claim will not be enforced by its holder, then the inquiring party may be a bona fide purchaser, even where the document from which the claim derives remains of record."), *aff'd in part, rev'd in part on other grounds*, 656 S.W.2d 902 (Tex. 1983) (op. on reh'g).  But that is not the case here.

Here, despite the misrepresentations by Teena and CUTX, the Mahanays are charged with constructive notice of the truth that would have been revealed by diligent inspection of the real property records. Those records would have informed the Mahanays of an outstanding claim to the property.

Moreover, at the time of closing, the Mahanays signed a title commitment that specifically mentioned the lien. This title commitment would have put the Mahanays on inquiry, and it thus only strengthens the case for holding the Mahanays to their constructive notice of the lien. *See Schwendeman v. BT SFRL I, LLC*, No. 02-19-00007-CV, 2020 WL 479592, at *7 (Tex. App.—Fort Worth Jan. 30, 2020, pet. denied) (mem. op.).

This notice, by itself, defeats their bona fide purchaser defense as a matter of law. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984). We therefore sustain Trinity's first issue. This renders it unnecessary to consider Trinity's second issue.

## C.     Extinguishment of the Lien

The Mahanays contend that notwithstanding any constructive notice, the judgment in their favor may be upheld on other grounds because the lien was extinguished through payment of the note. Much of the Mahanays' briefing concerns whether, despite the evidence that CUTX had assigned away the note and lien in 2008, CUTX could nonetheless accept payment on the note in 2009, either as the owner of the note and lien or as the servicer on behalf of Companion. According to the Mahanays, there is some evidence that CUTX was either the owner or the servicer and

13

thus validly accepted payment. The Mahanays submit that if CUTX validly accepted payment of the note, the lien would be instantly extinguished—which, they argue, is another means to justify the trial court's determination that the Mahanays took title free from the lien.

But the linchpin of the Mahanays' argument—that the lien was extinguished because the note had been paid off—does not have any apparent connection with their bona fide purchaser defense. There is no authority from this court that would allow the Mahanays to prevail on a bona fide purchaser defense by proving the separate issue of whether the lien was extinguished through a payoff. *See In re K.G.*, 350 S.W.3d 338, 345–46 (Tex. App.—Fort Worth 2011, pet. denied) (concluding that a judgment could not be upheld on an entirely different ground than the one found by the trier of fact). Rather, as we understand it, the Mahanays' case for the bona fide purchaser defense hinged on notice, and the notice element of the defense does not concern whether the lien is valid or extinguished.[3] This element instead concerns whether the purchaser has notice of *any claimed* interest in the property, whether or not that claim ultimately proves valid. *See Broadway Nat'l Bank*, 631 S.W.3d at 26 (couching the issue as whether the

---

[3]In *Gary E. Patterson & Associates, P.C. v. Holub*, the court assumed that the success of a bona fide purchaser defense depended on whether the underlying lien was valid, but it offered no authority to support this assumption. 264 S.W.3d 180, 187 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see also Murray v. Cadle Co.*, 257 S.W.3d 291, 301 (Tex. App.—Dallas 2008, pet. denied) (op. on reh'g) (implying that the validity of a lien factors into whether there is constructive notice of the lien); *Gen. Elec. Credit Corp. v. First Nat'l Bank of Dumas*, 432 S.W.2d 737, 739–40 (Tex. App.—Amarillo 1968, no writ) (same). We have never issued a similar holding, and we decline to do so today.

14

purchaser has notice of "*any* third-party *claim* or interest" (emphasis added)); *Madison*, 39 S.W.3d at 606 (same); *Barron v. Shmaisani*, No. 02-19-00064-CV, 2021 WL 2253301, at *16 n.16 (Tex. App.—Fort Worth June 3, 2021, pets. denied) (mem. op.) (same); *Orca Assets*, 470 S.W.3d at 164 (same). Thus, even if the lien were extinguished as the Mahanays claim, this circumstance would not support the judgment in the Mahanays' favor on the bona fide purchaser defense.

This view accords with the rationale for the bona fide purchaser rule. In part,[4] the rule is founded in comparative equity: the relative fault of the lienholder who, though he is in the best position to make the world aware of his interest, has failed to validly record it in the real property records, and the relative blamelessness of the purchaser who, in justified reliance on the records' silence, comes to the transaction innocent and is caught unawares. *See* Kochan, *supra* note 4, at 12–13, 15; *The Hazard of Fraud in Deeds of Trust*, 48 Yale L.J. 892, 893–94 (1939); *see also Fraim v. Frederick*, 32 Tex. 294, 308 (1869); *Blythe v. Crump*, 66 S.W. 885, 886 (Tex. App.—Dallas 1902, no writ). That innocence and lack of awareness does not hinge on the validity of the claimed interest, but on knowledge of the claim regardless of its validity.

And if the claimed interest has indeed been extinguished, then the purchasers are free to prove that vital fact regardless of the bona fide purchaser defense—just as the

---

[4]The rule is also rooted in a desire for certainty and simplicity in property transactions—a recognition that purchasers should not be required to look behind the real property records. *See* Donald J. Kochan, *Dealing with Dirty Deeds: Matching Nemo Dat Preferences with Property Law Pragmatism*, 64 U. Kan. L. Rev. 1, 12–13 (2015).

Mahanays may do when our disposition revives their quiet title claim. The Mahanays claim that the lien was invalid because it had been paid off. Though postured on appeal as a claim for declaratory judgment, the true basis of this claim remains one to quiet title. *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 38 n.1 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("When an action for declaratory relief and a suit to quiet title are based on the same facts and request similar relief, they are both treated as one suit to quiet title.").

## IV.    ATTORNEY'S FEES

In its third issue, Trinity prays for this court to reverse the attorney's fees that were awarded to the Mahanays under their declaratory judgment action.

When the trial court "awards attorney's fees to the prevailing party in a declaratory judgment action, and we reverse the trial court's declaratory judgment, we are required to remand the attorney's fees issue to the trial court for its reconsideration in light of our reversal." *Rhino Real Est. Invs., Inc. v. City of Runaway Bay*, No. 2-08-340-CV, 2009 WL 2196131, at *4 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.); *see Ferguson v. Ferguson*, 111 S.W.3d 589, 600 (Tex. App.—Fort Worth 2003, pet. denied).

We sustain Trinity's third issue.

## V. CONCLUSION

The trial court's judgment is in all things reversed and remanded for further proceedings.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 27, 2022